## Ex Parte Butler Williams.

*No. 803. Decided June 26th, 1895.*

**1. Local Option Election—Writs of Issued to Presiding Officers.**

Where a county election for local option, held at each and all ⸴the ⸤precincts of the county, was fair, just, honest and without fraud, the fact that writs for holding the election were not issued to the presiding officers of the various election districts in the county does not invalidate or render said election void. The law does not provide that such election shall be void for such cause.

**2. Same—Counting Votes Before the Close of the Election.**

While the statute provides that the votes shall be counted after the polls have closed, this is not an inhibition against counting the votes before its close.

**3. Same—Petition—Entry on Minutes of the Court.**

It is not necessary to enter a petition of the qualified voters for a local option election, upon the minutes of the Commissioners' Court.

**4. Same—Order for Changing Voting Boxes and Establishing New Ones.**

Where, after issuing the order for the election to be held at the regular voting places, the Commissioners' Court, at a regular term discontinued one of the voting boxes and created three new voting boxes, or election precincts, and the election was held at the voting boxes as changed and created. Held: The election was not invalidated by such change.

**5. Same—Adding up Tally Sheets Instead of Counting Polls.**

Where the Commissioners' Court, in ascertaining the result of a local option election did not count the polls, but simply added up the tally sheets; Held: That this was sufficient in the absence of evidence tending to show that the result was not as declared by the court.

Appeal from Fannin. Tried below, in vacation, before Hon. James Q. Chenoweth, County Judge.

Appellant was arrested upon a warrant issued upon a complaint charging him with a violation of the local option law of Fannin county.

He applied to the Hon. James Q. Chenoweth, County Judge, for a writ of habeas corpus, that he might be released and discharged from said arrest. The writ was granted, and at the hearing appellant was remanded to custody; and from this order and judgment of the court he prosecutes this appeal. The trial brought in question the validity of the local option law under which appellant was convicted. Most of the facts, shown in the statement of facts, are in the shape of admissions by

the parties, the most important of which are as follows, which we clip from the briefs of counsels on both sides:

It was admitted that on the petition of more than 1400 qualified voters of Fannin county, the Commissioners' Court of said county, at a regular term thereof, on February 11, 1895, ordered an election to be held on March 9, 1895, at all the regular voting places in said county, to determine whether or not the sale of intoxicating liquors should be prohibited in said county. It was admitted that the County Clerk of Fannin county posted, and caused to be posted, ten legal notices at different public places in said county for more than twelve days prior to the day·of election, and that at least one of such notices was posted in each of the justice's precincts of said county. It is admitted that on February 12, 1895, said court appointed presiding officers of election for each and all of the election precincts in said county; that prior to said March 9th, commissions were issued to each of said presiding officers, whereby each presiding officer was authorized to hold all elections in the voting precinct for which he was appointed, for the ensuing two years; that said commisions and a copy of the form of election returns furnished by the Secretary of State, were delivered to the sheriff of said county, who, previous to said March 9th, delivered to each of said presiding officers his said commission and said copy of the form of election returns; that the tally sheets so delivered, were so headed and marked as to show the purpose of said election; that is, they were marked, "For Prohibition," "Against Prohibition."

It is admitted that the following are newspapers published in Fannin county and have an aggregate weekly circulation of many thousand copies among the voters thereof: The Bonham News, Fannin County Favorite, Farmer's Review, and Texas Democrat, each published at Bonham, in justice's precinct No. 1; The Weekly Citizen, and Honey Grove Signal, each published at Honey Grove, in justice's precinct No. 5;·The Ladonia News, published at Ladonia, in justice's precinct No. 4, and the Leonard Graphic, published at Leonard, in justice's precinct No. 3, that each and all of these newspapers from week to week for at least three or four successive weeks before said local option election was held, mentioned the fact that said election would be held in ·Fannin county, on March 9, 1895; that many of them published communications from persons living in every part of the county favoring or opposing local option; that some of them had editorials every week on one side or the other of this question, and exhorted and advised every voter in the county to go to the polls and vote for or against prohibition, according to his convictions; that many sermons were preached and many speeches made in every part of the county on each side of the question, by men of local reputation and by men of State reputation; that prohibition clubs were organized in different places in nearly every voting precinct in the county; that public meetings were held with a view to informing the voters of the county of the time, place and purpose of said election; that many thousands of circulars and supplements to newspapers were

sent out by those favoring and by those opposing prohibition, and distributed among the great body of voters in every voting precinct in the county, in which the time, place and question to be voted upon were repeatedly stated; that the question to be voted upon aroused great interest among all classes of people and was much discussed and talked about by the voters in every part of the county; that said election was held at every regular voting place in the county by the regularly appointed and commissioned presiding officers, as aforesaid, and that the great body of electors in said county had actual notice thereof; that at said election many of those who favored and many of those who opposed the prohibition of said sales were present, worked to secure a majority for the side they favored, voted and participated in said election; that an election has not been held in years in Fannin county of which the voters of the county had fuller actual notice of the time, place and purpose of the election; that there was a large vote polled, to-wit: 7402 votes.

It was admitted that no writs of election were issued by the County Judge or Commissioners' Court, nor were there writs of election served upon any of the presiding officers of said election, and that the poll lists furnished to the officers of election had nothing upon the heads to indicate the question to be voted on, and that the only other forms furnished to the presiding officers of election were the tally sheets, which had written upon them, "For Prohibition," and "Against Prohibition."

It was admitted that at North Bonham box, where 818 votes were polled, at South Bonham box, where 540 votes were polled, at Honey Grove box, where 1045 votes were polled, and at Ladonia box, where 878 votes were polled at said election, and in fact at all of the other voting boxes in said county except six, the officers of election began opening the ballot boxes and counting the votes at the expiration of one hour. from the time of opening the polls, and continued opening and counting them until the close of the polls.

It was admitted that the petition praying for said election was signed by over fourteen hundred qualified voters of said county, but that the same as recorded upon the minutes of the Commissioners' Court showed only the names of 260 of such qualified voters.

It is admitted that said election was held at each of the twenty-four election precincts; that the election was fairly and honestly held; that the returns were correctly made as to the number of votes cast at each election precinct, and that there was no fraud practiced or undue influence exercised in said election.

It was proven by the twenty-four presiding officers of election that they were appointed at the February term, 1895, of said Commissioners' Court, and that they received their commissions prior to said March 9th, and also a copy each of said form of election returns, the tally sheets of which were marked as aforesaid; that they held the election in their respective election precincts on March 9th, 1895, to determine whether

or not the sale of intoxicating liquors should be prohibited in Fannin county; that said election was held according to the laws governing general elections in this State; that it was fairly held and conducted without force, threats or fraud, and that every voter in their respective precincts was afforded full opportunity to cast his vote as he saw proper; that the vote was fairly counted and due returns thereof made, as required by law, upon election returns previously furnished by said Commissioners' Court, and so headed and marked as to show the purpose of said election.

It was admitted that on February 11th, 1895, there were twenty-two voting boxes or election precincts, and only twenty-two, the same having been theretofore laid out and established by the Commissioners' Court in and for Fannin County, and that on February 12th, 1895, said Commissioners' Court made an order discontinuing Valley Creek voting box and creating three new voting boxes, and that said election was held at the voting boxes as so newly revised and created.

It was admitted that the Commissioners' Court did not open the boxes and count the ballots when they met to declare the result of the election, but simply added up the tally sheets, and in this way arrived at the information from which they declared the result of said election.

*Taylor, Galloway & McGrady*, for relator.—1. Art. 3238, Rev. Stats., as amended by Act of August 8, 1893, is in violation of Art. 16, Sec. 20, of the Constitution, as amended in 1893. See Whisenhunt v. State, 18 Texas Crim. App., 491.

2. No writs of election were issued. Rev. Stats., Arts. 1681, 1682, 3232.

3. The votes were counted before the polls were closed. Rev. Stats., Art. 3232.

4. The petition for the election was not recorded in full in the minutes of the Commissioners' Court. Rev. Stats., Art. 3227, as amended by Act, August 8, 1893.

5. The Commissioners' Court, when they met to declare the result, did not count the ballots, but simply added up the tally sheets. Rev. Stats., Art. 3233, as amended by Act, August 8, 1893.

*John C. Meade*, County Attorney, and *Lusk & Thurmond*, for respondent.—1. Art. 3238, Rev. Stats., as ameded by Act, March 29, 1893, give effect to Art. 16, Sec. 20, Constitution. Ex parte Segars, 32 Texas Crim. Reps., 553.

2. The purpose of Arts. 1681 and 1682, Rev. Stat., requiring writs of election to issue to the presiding officers of election, is to give notice to such officers, *and to them only*,·of the day of election and of the question to be voted upon, and they are not intended in any way to give notice to the electors, and where all the presiding officers in the county hold the election on the proper day, and for the proper purpose and at the proper place, and no injury results by reason of a failure to issue such writs, their issuance is not mandatory, but directory. Rev. Stats.,

Arts. 1681, 1682; Ex Parte White, 33 Texas Crim. Rep., 594; 6 Am. and Eng. Ency. of Law, page 325; id, Sec. 18, page 334; McCrary on Elections, third edition, Secs. 190, 191, 192, 193; Fowler v. State, 68 Texas, page 30; Wheat v. Smith, 7 S. W. Rep., page 161; Stallworth's case, 18 Texas Crim. App., 378; Davis' case, 75 Texas 420.

3. If it was error for the election officers to begin counting the votes before the polls were closed, this was but an irregularity, which should not affect the election. Weil v. Calhoun, 25 Fed. Rep., 865.

4. The revision and change of election precincts complained of by relator, were made at a regular term of the Commissioners' Court and in conformity to law. Sayles' Rev. Stats., Art. 1663a; 6 Am. and Eng. Ency. of Law, page 530, Sec. 5.

5. There being no contest pending as to the election, the method adopted by the court for counting the vote and declaring the result, was a proper one. James v. State, 21 Texas Crim. App., 353.

HURT, PRESIDING JUDGE.—Relator was arrested for selling whiskey in Fannin County, in violation of the local option law. Applicant applied to the Honorable James Q. Chenoweth, Judge of the County Court of Fannin County, for a writ of habeas corpus, for the purpose of being discharged from arrest, contending that the local option election in Fannin County was void:

1. That the Commissioners' Court had no right to order the election when it was ordered. This contention is settled against relator, not only by the statute, but by the opinion in Ex Parte Segars, 32 Tex. Crim. Rep., 553.

2. Because writs of election were not issued to the presiding officers of the various election districts in the county. It is not denied but that the election was held at each voting precinct, that the election was without fraud; nor that it was fair and just and honest. Elections being held at all of the precincts of the county, the fact that the writs were not delivered to the officers should not vitiate the election. The law does not provide that the election shall be void unless such writs are issued to the officers.

3. That the officers of some of the boxes began to count the vote before the polls were closed, and continued to count the votes until the close of the polls. The statute provides that the votes shall be counted after the polls have closed, but this is not an inhibition against counting the votes before its close. We can see no merit in this proposition.

4. It is not necessary to enter a petition of the qualified voters for an election upon the minutes of the Commissioners' Court.

5. That the election was void because the order of election directed that the election should be held at the regular voting places; that this was not done after said order was made; that the Commissioners' Court discontinued one of the voting boxes or election precincts, and created three new voting boxes or election precincts, the election having been held at the voting boxes as so changed and created. The fact is, after

the election was ordered, the Valley Creek voting box was discontinued, and Ector, Windom and Lanius were created in its stead.' This was done at the regular term of the Commissioners' Court for that year. The Commissioner's Court had a right to make the change. There is no pretense but that the election was held at the new voting precinct.

6. The Commissioners' Court did not count the polls, but did add up the tally sheets, and declare the result. This is sufficient, especially in the absence of any evidence tending to show that the result was not as declared by the court.

The judgment is affirmed.

*Affirmed.*