## J. B. CLARY ET AL. v. M. L. HURST.

### No. 2292. Decided June 23, 1911.

**1.—Elections—Local Option Law—Commissioners Court—Canvassing Returns.**

The Commissioners Court is not authorized by articles 3389 and 3390, Revised Statutes, in determining and announcing the result of an election for prohibiting the sale of intoxicating liquors under the Local Option Law, to open the ballot boxes and count the votes for and against prohibition; they are to determine the result from the returns made by the election officers, as in cases arising under the General Election Law (Rev. Stats., arts. 1743, 1747, 1753). The boxes are to be opened and the ballots counted only when the election is contested in the courts. (Pp. 423-431.)

**2.—Same—Words and Phrases Defined.**

The meaning of the phrase "opening the polls and counting the votes" as used in art. 3390, Rev. Stats., and of the words "poll," "ballot," "vote," "ballot boxes," "count," "consent," etc., considered and defined. (Pp. 428-431.)

**3.—Same—Statutory Construction.**

Various conflicting provisions of the election laws, the nature of the tribunal and of the proceedings in the canvassing of election returns by the Commissioners Court, the provisions for contesting the result, for the custody of the ballot boxes and their production, etc., considered in determining the construction of art. 3390, with reference to the powers conferred upon that court. (Pp. 426-431.)

Question certified from the Court of Civil Appeals, Third District, in an appeal from Caldwell County.

*E. B. Coopwood, John N. Gambrell* and *Barber & McKie,* for appellants.

*Frank S. Roberts, Newton & Ward,* and *Jeffrey, Jeffrey & Fielder,* for appellee.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The question presented for decision in this case and the manner in which it arose, as well as the facts in relation thereto, will distinctly appear in the certificate from the Third Supreme Judicial District, which for the sake of clearness we here insert in full:

"Appellee M. L. Hurst, styling himself a resident citizen of Cald-

well County, Texas, on the 24th day of March, 1911, filed his original petition in the District Court of Caldwell County, Texas, which was thereafter on the same day presented to the Hon. L. W. Moore, judge of said court, complaining of the Hon. Geo. W. Kyser, county judge of said county, and John Hurst, J. B. Clary, C. S. Conder and J. M. Cowley, composing the Commissioners Court of said county, and the Hon. W. F. McDowell, the county clerk of said county, alleging that on the 11th day of March, 1911, after legal notice had been given and all formalities had been fully complied with, an election was held in said county for the purpose of determining whether spirituous, vinous and malt liquors should be sold within the confines of said county; that the result of said election, as made by the returns of the various presiding officers at each of the voting precincts showed that by a majority of seventeen (votes) the citizens of said county had determined that the county should remain "wet," or that said election had resulted against prohibition, and that spirituous, vinous and malt liquors should be sold in said county as heretofore; that thereafter on the 22d day of March, 1911, the Commissioners Court of said county, composed of the defendants, John Hurst, J. B. Clary, C. S. Conder and J. M. Cowley, presided over by the defendant, the Hon. Geo. W. Kyser, county judge of said county, regardless of the result of the election at the various boxes declared by the presiding officers, entered an order that they would on the 23d day of March, 1911, open the various ballot boxes and examine the ballots of the voters to ascertain whether the results of said presiding officers were correct, which it was alleged was in direct contravention of the laws of the State of Texas, and that such conduct, if permitted, would result in irreparable injury to the plaintiff and the citizens of said Caldwell County, Texas, and that plaintiff had no adequate remedy at law to restrain the unlawful acts of said defendants about to be committed. Wherefore he prayed for the issuance of a temporary restraining order and injunction, restraining and enjoining the defendants, Geo. W. Kyser, county judge, John Hurst, J. B. Clary, C. S. Conder and J. M. Cowley, county commissioners of Caldwell County, Texas, and W. E. McDowell, county clerk of said county, from opening or attempting to open said ballot boxes, and for citation in terms of the law, and that upon final hearing the injunction so prayed for be perpetuated.

"Upon presentation of said petition to said Hon. L. W. Moore, judge of said District Court, said judge endorsed his fiat thereon as follows: "The foregoing petition for injunction being considered, it is ordered that the clerk of the District Court of Caldwell County, Texas, issue a writ of injunction in all things as prayed for in the within petition, upon the petitioner executing to the adverse parties a bond with two or more good and sufficient sureties in the sum of one thousand dollars, conditioned as the law requires." The said M. L. Hurst having executed and filed with the clerk of said court his bond as required by the fiat of said judge, said clerk immediately thereafter on the 24th day of March, 1911, issued said writ of injunction as therein directed by said judge, which was thereafter on said day duly served upon said county judge and county clerk and each of

said commissioners.   Whereupon three of said county commissioners joined by said county clerk, perfected their appeal from said order of said judge granting said temporary writ of injunction, to this court, where said cause is now pending on motion for rehearing; and by appropriate assignments appellants questioned the authority of the district judge to issue such restraining order, and assert that the Commissioners Court were authorized by law to open the polls and count the votes and declare the result of said election as they had determined to do.

"This court sustained appellants' contention and rendered judgment dissolving the injunction (see Clary et al. v. Hurst, 136 S. W., p. 840), and the matter is now pending in this court on appellee's motion for rehearing.

"In view of the fact of the frequency of local option elections throughout this State, and the public interest in and importance of the question involved, and on account of the desirability of having the question here presented passed upon by the Honorable Supreme Court of this State, to the end that the law may be definitely settled and determined, we now certify to your Honors for consideration the following question:

"Did the County Commissioners Court of Caldwell County have the right, under article 3390 of the Revised Civil Statutes of Texas, notwithstanding the fact that the officers holding such local option election had made their returns as prescribed by article 3389, to actually open the polls and count the votes for the purpose of ascertaining the result of said election, and determining whether or not a majority of the votes cast at said election was in favor or against prohibition in said county, and declare the result of said election, as required by said first named article?"

The case has been well and thoroughly briefed on both sides and was presented with both earnestness and ability in oral argument before the court.   It will be understood that our answer will relate solely to the very question presented and that neither by implication or otherwise are we to be understood as expressing any opinion upon any other question which may arise from the facts stated.

Our conclusion is that the Commissioners Court of Caldwell County had no right or authority under article 3390 of our Revised Statutes, or otherwise, to open the ballot boxes and count the ballots for the purpose of ascertaining the result of said election, and determining whether or not a majority of the votes cast at said election was in favor of or against prohibition in said county and declaring the result of said election.

If time and the business of the court permitted it would be a task well worth the while to consider and discuss all the interesting questions and views suggested by learned counsel.   These have all had careful attention as well as mature consideration, but we shall have to content ourselves with a discussion of only the more important, and, as we conceive, the controlling considerations which, after all, are decisive of the question involved.

That under the general election law the Commissioners Court has no authority to open the ballot boxes and count the ballots was, with

commendable candor, conceded in argument. That no such right exists is placed beyond doubt by reference to the statutes controlling in such cases. These articles so far as is here important are as follows:

· "Art. 1743. When the ballots have all been counted, the managers of the election in person shall make out triplicate returns of the same, certified to be correct, and signed by them officially, showing, first, the total number of votes polled at such box; second, the number polled for each candidate, one of which returns, together with poll lists and tally lists, shall be sealed up in an envelope and delivered by one of the managers of election to the county judge of the county; another of said returns, together with poll lists and tally lists, shall be delivered by one of the managers of election to the clerk of the County Court, to be kept by him in his office open to inspection by the public for twelve months from the day of the election; and the other of said returns, poll and tally lists shall be kept by the presiding officer of the election for twelve months from the day of election."

"Art. 1747. Immediately after counting the votes, by the managers of election, the presiding officer shall place all the ballots voted, together with one poll list and one tally list, into a wooden or metallic box, and shall securely fasten the box with nails, screws or locks, and he shall, within ten days after the election, Sundays and the days of election excluded, deliver said box to the clerk of the County Court of his county, or to the county to which the unorganized county is attached for judicial purposes, whose duty it shall be to keep the same securely; and in the event of any contest growing out of elections within one year thereafter, he shall deliver said ballot box to any competent officer having a process therefor, from any tribunal or authority authorized by law to demand such ballot box; provided, that all questions arising at any election board shall be settled and determined by the presiding officer and the judges, anything in any law to the contrary notwithstanding."

"Art. 1753. On the Monday next following the day of election, and not before, the County Commissioners Court shall open the election returns and estimate the result, recording the state of the polls in each precinct in a book to be kept for that purpose; provided, that in the event of a failure from any cause of the Commissioners Court to convene on the Monday following the election to compute the votes, then said court shall be convened for that purpose upon the earliest day practicable thereafter."

But it is urged that under articles 3389 and 3390, a different rule applies in respect to local option elections. These articles of our Revised Statutes are as follows:

"Art. 3389. The officers holding said election shall, in all respects not herein specified, conform to the existing laws regulating elections; and after the polls are closed shall proceed to count the votes, and within ten days thereafter make due report of said election to the aforesaid court."

"Art. 3390. Said court shall hold a special session on the eleventh day after the holding of said election, or as soon thereafter as practicable, for the purpose of opening the polls and counting the votes;

and if a majority of the votes are 'for prohibition,' said court shall immediately make an order declaring the result of said vote, and absolutely prohibiting the sale of intoxicating liquors within the prescribed limits, except for the purposes and under the regulations specified in this title, until such time as the qualified voters therein may at a legal election held for that purpose by a majority vote decide otherwise; and the order thus made shall be held to be prima facie evidence that all the provisions of law have been complied with in giving notice of and holding said election, and in counting and returning the votes and declaring the result thereof."

This question has never come before this court, but more than one of the judges of the Court of Criminal Appeals have had occasion to express themselves as to the meaning of these last quoted articles. In the case of Ex parte Williams, 35 Texas Crim., 75, 31 S. W., 653, Judge Hurt thus disposes of the question: "The Commissioners Court did not count the polls, but did add up the tally sheets and declare the result. This is sufficient, especially in the absence of any evidence, tending to show that the result was not as declared by the court." The same question came before that court again in the case of Chapman v. State, 37 Texas Crim., 167, 39 S. W., 113. It may be conceded that the expression of opinion by the court there was not strictly necessary to a decision of the case, but the conclusion reached is, as we believe, so accurately stated that it deserves reproduction. Judge Hurt there says: "By referring to said articles (3389 and 3390), and construing them together, we think they clearly indicate that the judges holding the election should count the vote and make due report of the count so made by them to the Commissioners Court, who examine the tally sheets or report of the judges, and estimate the result." A different view was expressed by the Court of Criminal Appeals in the case of Burrell v. The State, 65 S. W., 914, where Judge Brooks speaking for the court said: "Furthermore, article 3389, Sayles' Ann. Civ. St., provides that the officers holding the local option election shall, in all respects not herein specified, conform to the existing laws regulating elections, and, after the polls are closed, shall proceed to count the votes, and within ten days thereafter make due report of said election to the aforesaid court. Article 3390 provides that said court shall hold a special session on the 11th day after the holding of said election, or as soon thereafter as practicable, for the purpose of opening the polls and counting the votes. And, if a majority of the votes are for prohibition, said court shall immediately make an order declaring the result of said vote, etc. We hold that, under the provisions of the above articles, the Commissioners Court can count the votes, regardless of what result the election officers may have reached in their count of the vote, and, when they count the votes, they can declare the result of the election, as provided in said articles. The fact that the officers of the election had counted the votes would not preclude the Commissioners Court doing so. Hence appellant's contention that the law is invalid, on the ground that the Commissioners Court recounted the vote, is not well taken."

It will be noted that there was in none of these cases any discussion of the question, and while the opinion of that great court is entitled

to weight, it is to be regretted that their opinions are not in any case fortified by any authority or illuminated by any discussion. With one more quotation of a recent statute we will, as briefly as may be, proceed to give the reasons on which our conclusions rest.

By an Act of the Thirtieth Legislature, page 338, passed in 1909, article 3389 of our Revised Statutes was amended so that same now reads as follows:

"Article 3389. The officers holding said election shall in all respects not herein specified, conform to the general election laws now in force regulating elections; and after the polls are closed shall proceed to count the votes, and within ten days thereafter make due report of said election to the aforesaid court."

Now, then, the conclusion is inevitable that if the provisions touching local option elections fairly construed, according to their true intent, authorize the Commissioners Court to open the ballot boxes and count the ballots, such provisions should be upheld and preserved. If, however, this right is not given by these particular and special provisions, then undoubtedly under the general election laws no such authority exists. We are then confronted with the duty of discovering the legislative intent. What did the Legislature mean? If we can ascertain this intent we must and we will give it effect.

While not absolutely controlling, some aid in solving this question may be obtained by considering the nature and functions of the tribunal with which we have to deal. Consideration of the preservation of the secrecy of the ballot, and the reason or lack of reason for the grant of such a power as is herein claimed. The Commissioners Court and other similar tribunals, by whatever name called in respect to elections, have universally been considered and held to be mere canvassing or returning boards. It possesses, in the proper sense of the term, none or few of the attributes of a court clothed with judicial functions. Its members are not lawyers nor trained in the law. From its action in this matter, if authorized to act, no appeal lies. No provision is made for the appearance of parties interested either in person or by counsel. If allowed at all its action would be wholly ex parte and might be wholly secret and executive. Again, its count, if it is allowed to count, would conclude no one, and a contest might still be carried on. Again, why grant this power in local option elections and deny it in every other election? It is to be conceded that such elections, which, if successful, write law and create offenses, are of great importance, but it can scarcely be concluded that they more vitally affect or concern the people of this commonwealth than all the other elections both in respect to men and measures, some of which may and in times past have wrought great changes in the organic law of the land. Again, why as to such elections remove the bar of secrecy of the ballot and yet shield the ballot with the protecting arm of the government in all other cases. Confessedly these considerations must yield if the Legislature *has* granted this unusual power, but in searching for the true intent and purpose of the law-making body they should have, we think, some weight, and to our minds they furnish some aid.

Attention was called, in argument, to the fact that in article 3389

it is provided that after the polls are closed the officers holding the election "shall proceed to count the vote," and that in article 3390 it is provided that the court shall hold a special session "for the purpose of opening the polls and counting the vote." The use of the language, "shall proceed to count the vote," which in respect to the judges holding the election undoubtedly means count the ballots or the votes evidenced thereby, contained in article 3389, followed by the language in article 3390 "for the purpose of opening the polls and counting the votes" does indeed lend some strength to appellee's contention. But we must take the whole of the phrase "for the purpose of opening the polls and counting the vote" together. What is meant by "opening the polls?" It would be impossible to again open the polling places or booths in the different parts of the county by the Commissioners Court in either special or regular session. It certainly does not mean that. Does it mean the voting boxes or receptacles in which the freeman's ballot has been deposited? We can not think so. Some aid may be obtained by a reference to the standard authorities which define the words poll, ballot, vote and ballot box.

The word "poll" has been defined to mean the number of aggregate of heads, a list or register of heads, or individuals who vote at an election. Words & Phrases, vol. 6, page 5446; See also Citizens, etc., v. Williams, 49 La. Ann., 422, 37 L. R. A., 761.

Ballot and vote are sometimes confused, and while they are sometimes used synonymously, the ballot is, in fact, under our form of voting, the instrument by which the voter expresses his choice between candidates or in respect to propositions, and his vote is his choice or election as expressed by his ballot. Words & Phrases, vol. 8, page 7358; Davis v. Brown, 46 W. Va., 716, 34 S. E., 841.

Votes and ballots, it is said, are frequently used one for the other, but they are not synonymous. Words & Phrases, vol. 8, page 7359; Gillespie v. Farmer, 20 Wis., 544.

Ballot box, as defined in Words & Phrases (vol. 1, p. 681), means a receptacle provided by the officers or person holding an election, for receiving the ballots, which box is to be kept locked or otherwise well secured until the election is finished. It is admitted by counsel that the words or phrase "opening the polls" used in article 3390 is "somewhat confusing," but it is urged that the act of opening the boxes could with as much propriety be called opening the polls as the act of opening the envelopes, in which were enclosed the returns from the election officers. It is to be admitted that the term is both obscure and confusing, but, as we view the question, this confusion becomes worse confounded if we are to say that "polls" means the ballot boxes, while, as will be hereinafter shown, polls seems to be used sometimes as meaning returns. Our attention is called to section 3 of the Act of the Legislature of June 29, 1876, relating to contests of officers which contains the following provision: "And it shall be the duty of the officer in whose charge the custody of the several *boxes* containing the *polls,* tally lists and poll lists may be, upon application by either of the contesting parties in such causes and the filing of an affidavit that both of the duplicates, poll lists, or tally lists required by law were sealed in any such boxes, to open the same after having given

five days' notice to the opposite party," etc. And it is urged that the word "poll" as here used does not mean the election returns. To this we agree. It is evident that the word poll is here used in its primary and proper sense and as defined above. But is it not evident and demonstrable that it does *not* mean ballot box? It speaks of the boxes *containing* the polls. Here we have a certain and clear definition, in the statute, that box and poll are not the same and it seems to us that it could not be made plainer that poll does not mean ballot boxes, and where in article 3390 the term "opening the polls" is used it is clear that it is not meant opening the ballot boxes. We think the word "polls," as here used, means and is synonymous with the word "returns," as used in the general election law, and we think this is demonstrated practically beyond doubt by reference to article 1753, above quoted. It is there, among other things, provided that "the county commissioners shall open the election returns and estimate the result, recording the state of the *polls* in each precinct in a book to be kept for that purpose." What is here meant by "polls?" Is it not meant the returns or results as evidenced by the report of the presiding officer of each election precinct? If this is the correct meaning of the term as here used, have we not a legislative definition of the word? So construed and so applied is it not evident that the true intent of the phrase in article 3390, "for the purpose of opening the polls and counting the votes," means for the purpose of opening the returns and counting (or computing) the votes? We think the word count, as here used, does not mean to count the votes, ballot by ballot, but to count, compute or reckon from the returns in hand. The word is often so used and is thus defined in the latest edition of Webster's New International Dictionary: "To tell or name one by one, or by groups, for the purpose of ascertaining the whole number, of units, in a collection, to number, enumerate, compute or reckon."

Again, it is worthy of note that by article 1743, Revised Statutes, it is, in substance, provided that the *returns,* together with poll lists and tally lists, of the election shall be delivered to the county judge, and also to the clerk of the County Court, while it is provided by article 1747, in effect, that the presiding officer shall place all the ballots voted, together with one poll list and one tally list, into a wooden or metallic box, and shall securely fasten the box and deliver the same to the clerk, who in the event of a *contest,* shall deliver same to any competent officer having *process* therefor from any tribunal or authority authorized by law to demand such ballot box.

Now, then, it will be seen that if the court is to compute the result in the usual way from the returns furnished, the law makes ample provision in the lists and returns furnished both the county judge and the clerk of his court to perform this duty. If it was intended that the actual ballots should be counted, one by one, and that this count should control, why go to the trouble of making out all these returns, one for the judge, one for the clerk, one to be deposited in the sealed box with the ballots and one to be retained by the presiding judge of the election?

But it is urged again, and the point is not without plausibility, and

it is urged with such skill and ingenuity as to incite admiration, that since under the original Act of June 24, 1876, there was no provision made for a contest of a local option election, and since no contest was provided for in any other statute, as to such election, that it was quite natural that the Legislature should wish to throw some safeguard around such elections and that this furnishes some reason for the special provisions in article 3390, which are found nowhere else in all our statutes. As stated, this consideration is not without its weight, and yet on reflection, if this view were entertained, it must have occurred to any thoughtful mind that in the returns made from the many boxes, where both sides would ordinarily be represented and where their fidelity was to some extent assured by heavy penalties for any violation of duty, and where in most cases they could not know the state of the vote over the county, there would be probably a stronger assurance of a fair return than before a tribunal comprised of a few men, who were apt to be partisan, whose action was subject to no review and punishable with neither fine nor imprisonment. Again, how often have statutes been passed even in election matters that were imperfect, especially in respect to contests? And again, if this were intended why not exempt the custodian of the boxes from other special duties and burdens which confessedly the law has imposed on him?

Again, it must be remembered that in 1894 provision was made for contest of local option elections and that since then the revision of 1895 was adopted and that within very recent years an Act has been passed in terms extending the general election laws over local option elections, unless rendered inapplicable by the special terms of the local option statute. All this, it seems to us, evinces a clear and settled purpose to apply the general provisions of our election laws to local option contests.

Again, if the ballots are to be counted, why should the boxes containing them be delivered, not to the county judge, but to the county clerk to be securely kept, and not to go out of his possession except on legal process in a suit or contest of the result of such election?

Again, it is manifest that the box containing these ballots can not and was not intended to be opened except in the event of a *contest* and then only in response to and by authority of due and lawful process. And by contest here is meant, we think, a suit in which the validity of the election or the correct ascertainment of the result thereof is the subject matter of litigation in a court having jurisdiction to hear and determine such issues. This view harmonizes all the provisions of our election laws, preserves the secrecy of the ballot, and provides for a preservation, under seal, of the integrity of the ballot, in the event of a contest, and can not by any possibility work either harm or injustice to anyone, and is consistent, as we believe, not only with the true intent and purpose of the Legislature, but in harmony with our entire election machinery.

For many other reasons and led by many other analogies and considerations which time does not suffice to write out, as well as these given above, we think the answer above given is correct and we all so adjudge.