MARY SLATER ET AL. V. ELLIS COUNTY LEVEE IMPROVEMENT DISTRICT NO. 9 ET AL.

No. 5634. Decided April 1, 1931.
(36 S. W., 2d Series, 1014.)

*John W. Pope, J. L. Zumwalt,* and *Tom Whipple,* for appellant.

Whether the persons who voted at the bond election were qualified voters was, and is, a matter of record, and also whether the judges and clerks who held the election were qualified voters is also a matter of record. The only way in which to prove these people were qualified voters was by examination of the county records. No extraneous proof could be admitted or would be necessary.

The statutes require that a record be made and furnished to the attorney general before he can approve the bonds. This record would have to include the names of the voters and the result of the election, and this would show conclusively that the commissioners court was guilty of fraud in declaring that legally qualified voters had participated in the election. Article 8010, Revised Civil Statutes, 1925, provides that the validity of the bonds can be determined by the court, and that the only defense that can be offered is forgery or fraud, and that the bonds are only prima facie valid. If the commissioners court is guilty of fraud the

statutes cannot be given any effect unless we are permitted to plead and prove such fraud in the suit instituted by the bond holders. The bond holders are the original payees in the bonds and are not holders in due course, however, they may be considered so. They unquestionably come under the terms of the statute above quoted. Citizens Bank v. City of Terrell, 78 Texas, 460, 14 S. W., 1003; Morten v. Thomson, 15 S. W. (2d) 1067; Preston v. Anderson County L. Imp. Dist. No. 2, 3 S. W. (2d) 888.

Article 8010 does not appear to have been brought to the attention of the court and all the decisions apparently ignore this article and the decisions are based upon the grounds that the orders of the commissioners court, like any other court, are not subject to collateral attack. We understand that by the term collateral attack is meant an attack which is to be supported by evidence outside of the record. With reference to the issuance of bonds we contend that the county records containing the names of the owners of lands in the district and the names of the qualified voters in the district are as much a part of the record as the value of the lands or the orders of the commissioners court putting the lands in the district, and, therefore, this would not be a collateral attack. If we are mistaken as to this, then we contend that article 8010 gives us the right to make the collateral attack, because the bonds are declared to be only of prima facie value and that the defense based upon fraud or forgery shall be admitted to defeat the bonds.

Forgery could not be offered as a defense in the contesting of the bond election, for the reason that until the election was declared in favor of the issuance of bonds, no bonds could or would be issued. Forgery could not be an issue in the quo warranto proceedings, because if forgery was proved, then the act would not be that of the district, nor could the district be penalized by reason of the forgery having been committed by any person. On the other hand, fraud could apply to the election contest, or to the quo warranto proceeding, but as stated by the court, it is very rare that fraud can be proved except by circumstantial evidence, and this of necessity, would require the resort to testimony not contained in the record. Thus, in order to give effect to article 8010 the issue of fraud based upon the fact that the voters at the bond election were not qualified and that the officers of the election were not qualified, and that the commissioners court knew such facts and deliberately acted and declared the result in favor of issuance of bonds, and with the county record showing such facts, then it is apparent that the defense of fraud provided by the article of the statute was proper and the exception to such defense should not have been sustained.

The record in this case shows that the district was created as a levee district in 1918. This was done under the provisions of section 52 of article 3 of the Constitution providing for the creation of such districts.

The powers granted by the amendment was for the improvement of rivers, creeks and streams to prevent overflows and to permit of. navigation or irrigation, and also for the construction and maintenance of pools, lakes, reservoirs, canal and waterways for the purpose of irrigation, drainage or navigation. This amendment also limited the debts of such a district to an amount not to exceed one-fourth of the assessed valuation of the real property, and in case of the issuance of bonds, the levy and collection of taxes to pay the interest and to provide a sinking fund as the Legislature may authorize. The district was created for the purpose above stated and with the limitations upon its issuance of bonds. As such a district, it cannot issue bonds exceeding one-fourth of the assessed values of the lands in the district.

The record shows it to be a levee district and the law required that before its establishment, a survey should be made, and the amount of improvements necessary to be made, and the cost should be estimated. This was done, and shows that the estimated cost of the improvement would be $55,000. · The district, instead of proceeding in accordance with section 52 of article 3 above cited, undertook to convert itself into a conservation district under the terms of section 59-A of article 16 of the Constitution. After its conversion, if in fact, a legal conversion was made, the bond election was held and the bonds issued to the plaintiffs in this proceeding. The amount of the bonds issued was $55,000, the exact amount estimated to be needed as a levee district.

We assert that the supposed conversion of the levee district into a conservation district was illegal and void, and further, that it was an intent to evade the provisions of section 52, article 3. The whole purpose of the conversion was to issue more bonds and tax the defendants' land in a much greater amount than it could have been taxed under section 52 of article 3 of the Constitution.

It may be contended that the benefits to the land were determined by the commissioners court in passing upon the petition to create the levee district. If this be true, then the taxation of the defendants' lands must be had under section 52 of article 3, which limits the bonds to one-fourth of the assessed valuation, and therefore, the unlimited power of taxation claimed by the bondholders and sustained by the trial court cannot exist. If, however, it is determined that we are wrong in this position, then we say that the petition for the creation of the district as alleged by the bondholders, did not comply with the law, and that no person could legally be required to answer such a petition and no power existed on the part of the commissioners court to consider or grant the same.

*W.· P. Dumas* and *L. J. Stemmons,* for appellee.

The method of contesting elections provided by the statutes of this state is an exclusive remedy for determining the validity of bond election, and such issues cannot be raised in a suit to enforce the collection of

taxes authorized at such an election. Robertson v. Haynes, 190 S. W., 735-736; Coffman v. Goree Ind. School Dist., 141 S. W., 132; State v. Bank of Mineral Wells, 251 S. W., 1107 (writ of error denied by the Supreme Court); Simpson v. City of Nacogdoches, 152 S. W., 863; City of Tyler v. Tyler Building and Loan Association, 86 S. W., 750; Parker v. Harris County Drainage District, 148 S. W., 351 (writ of error denied by Supreme Court).

It is not claimed or alleged by the plaintiffs in error that they (or their predecessor in title) presented any objections to the commissioners' court at the time of the hearing on the incorporation of the district, at which time the cost of the improvement was known (Rutledge v. State, 7 S. W. (2d) 1074), or that they ever filed suit to attack the plan of the proposed improvement (chapter 146, acts 1915, sec. 22); or that they ever appeared before the commissioners' court and sought to have the valuations reduced; their answer is therefore demurrable, and they cannot now attack the amount of the bond issue or the valuation of this property.

Mr. Commissioner LEDDY delivered the opinion of the court.

Certified questions from the Court of Civil Appeals for the Tenth Supreme Judicial District. The statement and questions are as follows:

"This suit was instituted by appellee, Ellis County Levee Improvement District No. 9, on the relation of the Brown-Crummer Investment Company, a corporation, under Article 8017 of the Revised Statutes, to recover delinquent taxes due on certain land embraced within said levee district for the years 1919 to 1926, inclusive.

"Appellees alleged that the levee district was duly created under and by virtue of the Acts of the Fourth Called Session of the 35th Legislature, known as the 'Canales Act'; that bonds to the amount of $55,-000.00 were duly voted by said district and that the Brown-Crummer Investment Company had purchased and was the owner of said bonds; that the board of supervisors of said district had failed and refused to commence suit to collect the delinquent taxes in said district and by reason thereof this suit was instituted. Appellees alleged that the land owned by appellants on which taxes were due consisted of 177.3 acres out of the Robert Ray and G. B. McKinstry Surveys, and had been assessed for each of the years from 1919 to 1926, inclusive, as 110 acres out of the McKinstry Survey, valued at $2750.00, and 55 acres out of the Ray Survey, valued at $440.00, a total valuation for taxation purposes of $3190.00. Appellees alleged that for 1919 there was duly and regularly levied by the commissioners court of Ellis county a tax of and at the rate of $43.00 on each $100.00 valuation of taxable property located in said levee district; for 1920 at $72.00 on each $100.00 valuation; for 1921 at $55.00 on each $100 valuation; for 1922 at $53.00 on each $100.00 valuation; for 1923 at $62.38 on each $100.00 valuation; for 1924 at

$60.30 on each $100.00 valuation; for 1925 at $55.96 on each $100.00 valuation, and for 1926 at $63.00 on each $100.00 valuation; a total tax for the eight years of $20,473.22 on land valued for taxation at $3190.00. Appellees specifically alleged that bonds aggregating $55,000.00 were duly issued and sold pursuant to a favorable vote of the qualified property tax-paying voters of said levee district, and an election duly petitioned for and ordered and held within said district for that purpose on the 14th day of June, 1919, and of which election due notice was given by the county clerk of said county, in the manner and for the length of time prescribed by law, and that the returns of said election were duly made to and canvassed by the commissioners court of Ellis county. It also alleged that the bonds were issued and that same were signed and executed by the county judge and treasurer of Ellis county and approved by the Attorney General of Texas, and registered with the State Comptroller, and thereafter sold to appellee Brown-Crummer Investment Company.

"Appellant, in addition to other defenses, specially denied that any legal bonds were ever issued against the levee district, and that the levy of the tax for the payment of the interest and sinking fund on said bonds was illegally and wrongfully made, because no legal election was ever held in said levee district for the issuance of bonds. They alleged that while the election was ordered to be held on the 14th of June, 1919, that the officers, judges and clerks, if there were any, who held said election fraudulently made returns with reference thereto which were untrue, and that said election was fraudulently held and returns thereof fraudulently made, and that the commissioners court knew, or at least one member thereof did, that none of the parties who voted at said election were qualified voters within said levee district; that as a matter of fact none of the persons voting in said election were qualified voters within said levee district, and that none of the persons who held said election were residents of or qualified voters within said district, and that all of said facts were known to at least one member of the commissioners court of Ellis county at the time the election was held and the returns canvassed and the bonds ordered issued. They alleged that by reason of the above facts said election was absolutely void and of no force and effect, and that the bonds issued thereunder were void and that the tax levy made against their lands was void.

"Appellees specially excepted to appellants' allegations above, calling in question the legality of the bond election in the levee district and the legality of the bonds of said district and the legality of the levy of the tax for the payment of interest and principal, because same could be attacked only by a quo warranto proceeding brought by the State of Texas, or by someone under its authority, and because appellants could not be heard in a proceeding for the collection of delinquent taxes to contest a bond election, since Articles 3041 to 3075, inclusive, of the Revised

Statutes provide an exclusive method for the contest of a bond election; and further, because appellants' alleged defense was in the nature of a collateral attack upon the orders of the commissioners court of Ellis county in declaring the result of the bond election and authorizing the bonds issued in compliance therewith. The trial court sustained said special exception of appellee, and appellants present same as ground for reversal in this court.

"Appellants also present as ground for reversal what they term fundamental error, contending that the petition of appellees shows on its face that the taxes levied are confiscatory and amount to a taking of their property without due process of law, in contravention of section 14 of the Federal Constitution and of sections 17 and 19 of the Bill of Rights of the State Constitution, on the theory that appellees' petition alleges the tax assessed for each year was more than fifty per cent of the value of the property, and for the eight years the taxes amount, according to said allegations, to six times the value of appellants' property.

"There is no statement of facts nor findings of fact with the record. We are sending with this certificate the transcript, and refer the court to the pleadings of the parties for a full statement thereof.

"There being some doubt in our minds as to the correct determination of the above questions, we have deemed it advisable to and we do hereby respectfully submit to the Honorable Supreme Court of this state, for its determination upon the facts hereinbefore set out, the following questions:

## "FIRST QUESTION

"Did the trial court err in sustaining appellees' special exception to that portion of appellants' answer which set up the fact that no legal bond election was held in said district because the true facts, of which the commissioners court had actual knowledge, were that none of the parties who voted therein were property holders or qualified voters within said district, and because the judges and clerks who held said election were not qualified voters within said district?

## "SECOND QUESTION

"Since appellees' pleadings allege that the property was valued for taxation for each of the eight years for which same is delinquent and for which taxes suit is brought, at $3190.00, and further allege that the tax rate as fixed by the commissioners court for each of said years ranged from $43.00 on the $100.00 valuation to $72.00 on the $100.00 valuation, giving the tax rate separately for each year, making a total tax for the eight years of $20,473.22 against land valued for taxation at $3190.00, does same present on its face a taking of appellants' property without due process of law, in violation of the 14th amendment to the Federal Constitution, or in violation of sections 17 and 19 of the Bill of Rights of the State Constitution?

## ·"THIRD QUESTION

"If question No. 2 is answered in the affirmative, then do said pleadings present such fundamental error apparent of record, which would authorize this court to reverse the judgment of the trial court by reason thereof?"

The remedy given by the statutes (articles 3041 to 3075) for contesting elections of this character for irregularities or fraud is exclusive of all others. State v. Bank of Mineral Wells (Texas Civ. App.), 251 S. W., 1113 (writ refused); Wilmarth et al. v. Reagan (Texas Com. App.), 242 S. W., 726; Robertson v. Haynes (Texas Civ. App.), 190 S. W., 735; Parker v. Drainage District (Texas Civ. App.), 148 S. W., 351.

Appelants have frankly conceded in the argument in this court that this question was determined adversely to their contention by the Court of Civil Appeals in the case of State v. Bank of Mineral Wells, above cited, in which a writ of error was denied by the Supreme Court. They assert, however, that the court, in deciding that case, failed to take into consideration the provisions of article 8010, R. S., 1925, which in effect provides that after bonds have been issued by a levee district, approved by the attorney general and registered with the comptroller, in every action brought to enforce their collection a tax-payer may urge either forgery or fraud as a defense against the validity thereof. Under this provision it is claimed that they are entitled in a suit against them to recover delinquent taxes to maintain the defense that the election for the issuance of the bonds was fraudulently conducted.

Articles 3041 to 3075, outlining the procedure for the contesting of elections, as well as article 8010, were adopted as a part of the code of 1925. These statutes being enacted by the same Legislature, relating to the same subject matter, should be so interpreted as to harmonize their provisions, if such a construction be fairly justified. Southern Pac. Ry. Co. v. Sorey, 104 Texas, 476, 140 S. W., 334; Conley v. Daughters of the Republic, 106 Texas, 80, 156 S. W., 197, 157 S. W., 937.

To construe article 8010 as permitting the contesting of elections of this kind for fraud in the conducting of same in a suit to recover delinquent taxes would bring it in conflict with the provisions of the statutes establishing a method for the contesting of elections, as under such statutes fraud or any other irregularity is made the basis for the contest therein provided.

Article 8010 is susceptible of a construction which will not conflict with the statutes outlining procedure for contesting bond elections and that is the fraud permitted as a defense in a suit by the bondholders was intended to refer to fraud occurring subsequent to the bond election in the issuance, sale, or delivery of the bonds. It is a well known fact that there have been a number of cases where fraud has been perpetrated by officials of counties and districts in the issuance, sale and delivery of bonds

voted by the tax payers. The Legislature, knowing this fact, doubtless intended to give interested property holders the right to defend in a suit to enforce the collection of a tax against their property where such fraud had been committed, as such a defense could not be made under the statutes providing for an election contest.

This view as to the legislative intent in enacting this article is strengthened which consideration is given to the fact that the Legislature in 1909 passed a similar statute with reference to bonds of various districts (now article 2670, R. S., 1925). The latter statute had been construed by our appellate courts prior to the time the Legislature enacted the statute now under consideration to foreclose the right of property holders to contest an election for the issuance of bonds upon any grounds except in the manner provided for election contests. Under these circumstances it must be presumed that article 8010 was passed with the intent that its effect would be the same as that given by the courts to a previous enactment of similar import. Cooper v. Yoakum, 91 Texas, 391, 43 S. W., 871; Bonner v. Hearne, 75 Texas, 242, 12 S. W., 38.

Again, no sound reason can be advanced why the Legislature should discriminate in favor of property holders in levee districts by according them a privilege which it has denied property holders in all other districts whose rights might be similarly affected. Such an unreasonable construction should not be given this statute in the absense of compelling language. Stone v. Hill, 72 Texas, 540; R. Co. v. Tod, 94 Texas, 632, 64 S. W., 778.

The second question certified presents the proposition that the taxes levied against appellant's land appear, from the face of their petition, to be so excessive as to show a taking of property without due process of law, in violation of the provisions of both state and federal constitutions.

The mere fact that taxation imposed, or authorized to be imposed, by the Legislature, is oppressive and confiscatory, presents no ground for judicial interference, where no constitutional restriction exists upon the taxing power. McCulloch. v. Maryland, 4 Wheat., 316, 4 L. Ed., 579; State v. Board of Com'rs. of Marion County, 170 Ind., 595, 82 N. E., 482; Judy v. Beckwith, 137 Iowa, 24, 114 N. W., 565, 15 L. R. A. (N. S.) 142; North Mo. R. R. Co. v. Maguire, 49 Mo., 490, 8 Am. Rep., 141.

The principle announced in these cases is well stated in Ruling Case Law, vol. 26, sec. 17, in this language:

"One of the principles first laid down by the supreme court of the United States with respect to the power of taxation was that the power to tax involves the power to destroy, * * * Since the taxing power conferred by the constitution knows no limits except those expressly stated in that instrument, it must follow that if a tax be within the lawful

power, the exertion of that power may not be judicially restrained because of the results to arise from its exercise."

As said in McCulloch v. Maryland, the only security against an abuse of the power of taxation, when the same is not limited by constitutional provision, is found in the structure of the government itself, in that, in imposing or authorizing the imposition of a tax the Legislature acts upon its constituents.

Under the terms of the Conservation Amendment (Const., art. 16, sec. 59a), there is no limit to the amount of taxes which may be imposed to secure the payment of bonds authorized to be issued by a majority vote of the property tax payers of a levee district operating thereunder. When bonds have been voluntarily voted by the tax payers of such a district, at an election held in accordance with the statutes, those purchasing the bonds are entitled to have taxes levied in sufficient amount to pay the principal and interest according to the terms thereof. If the tax necessary to be levied to mature such bonds is oppressive and operates to confiscate property situated in such district, this unfortunate result is due to a failure of the people to place some restriction in the constituion limiting the amount of bonded indebtedness which the Legislature might authorize thereunder and to the voluntary action of the majority of the property holders residing within the district in voting an amount of bonds which would require the levying of taxes to such an extent as to operate to deprive them of their property. The courts are without authority to fix a limit upon the power of the people or the Legislature to levy taxes for lawful purposes where the organic law has placed no restriction thereon.

Appellants assail the Canales Act (Acts 35th Leg., 4th Called Sess., 1918, c. 25), under the authority of which the bonds were issued, as being unconstitutional and void. We are not authorized to pass upon this question, as in answering certified questions we are confined to a consideration of the questions submitted in the certificate of the Court of Civil Appeals. Berlin Iron Bridge Co. v. City of San Antonio, 92 Texas, 388, 49 S. W., 211; Snyder v. Baird Ind. School Dist., 102 Texas, 4, 111 S. W., 723; Clary v. Hurst, 104 Texas, 423, 138 S. W., 566.

We recommend that the first and second questions be answered in the negative, which renders unnecessary an answer to the third question.

Opinion answering certified questions adopted, and ordered certified.

C. M. CURETON, Chief Justice.