## LANCASTER v. WHEELER et al.
(No. 2948.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 13, 1924.)

1. **Landlord and tenant ⊙⇒200(1½)—Landlord's lien held not defeated by fact that amount of cotton specified as rent was more than one-fourth amount actually produced.**

Where rental contract specified that rent was to be one bale of cotton, landlord's lien for rent was not defeated under Rev. St. art. 5475, as amended in 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5475), by fact that such amount was more than one-fourth of cotton raised on premises, it not being shown that such amount exceeded legal percentage of what premises could by proper cultivation yield under ordinary conditions.

2. **Contracts ⊙⇒141(1)—One attacking validity of contract apparently lawful has burden of proving illegality.**

One impeaching validity of contract apparently lawful has burden of proving illegality.

3. **Landlord and tenant ⊙⇒182—Validity of rental contract tested by law and conditions at time of execution.**

Validity of rental contract, with respect to amount of rent, must be tested by law and conditions existing at the time it is executed.

Appeal from Harrison County Court; Jno. W. Scott, Judge.

Action by Nelson Wheeler against C. D. Lancaster and another. From judgment of justice court for plaintiff, named defendant appealed to county court, and from its judgment for plaintiff, he appeals. Affirmed.

C. E. Carter, of Marshall, for appellant.
Lane & Lane, of Marshall, for appellee.

HODGES, J. In 1923 the appellee, Nelson Wheeler, owned a tract of 50 acres of land situated in Harrison county. In the early part of that year he rented the land to Tom Lias for one year, under a parol agreement, in which the tenant agreed to pay as rent one bale of lint cotton weighing 500 pounds from the "first picking." Wheeler was to furnish only the land, and Lias was to furnish all other things essential to growing the crop. There was no tenant houses or other improvements on the land, but it appears that the tenant had the right to use the entire 50 acres. Lias entered into possession of the premises, and planted in cotton between 17 and 20 acres. His crop yielded 524 pounds of lint cotton and 140 pounds of seed cotton, all of the aggregate value of $136.46. The record does not show that any other crop of any kind was grown on the land that year. In order to secure supplies Lias, early in the year, mortgaged his entire crop to C. D. Lancaster, the appellant, for the sum of $150 due in the fall. When the cotton was ginned and baled, it was delivered to Lancaster in part payment of the debt for supplies, and Lias received credit on his account a sum equal to the market value of the cotton. No part of the rent was paid. Within less than 30 days after the cotton had been removed from the rented premises, Wheeler filed this suit in the justice court against Lias for the rent due, and to foreclose a landlord's lien on the bale of cotton then in the hands of Lancaster. The latter was made a party defendant in the suit. In a trial in the justice court judgment was rendered in favor of Wheeler for his debt and the foreclosure of his lien. On appeal to the county court, prosecuted by Lancaster alone, a similar judgment was rendered, and, from that judgment, Lancaster has appealed to this court.

[1] Among other things Lancaster pleaded that the plaintiff Wheeler had no valid lien on the bale of cotton, because the contract with Lias, the tenant, stipulated for the payment of an excessive amount of rent and was in violation of article 5475, Revised Civil Statutes, as amended in 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5475). The amendment referred to is as follows:

"All persons leasing or renting lands or tenements at will or for a term of years shall have a preference lien upon the property of the tenant, as hereinafter indicated, upon such premises, for any rent that may become due and for all money and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to make a crop on such premises, and to gather, secure, house, and put the same in condition for marketing, the money, animals and tools and provisions and supplies so furnished being necessary for that purpose, whether the same is to be paid in money, agricultural products or other property; and this lien shall apply only to animals, tools and other property furnished by the landlord to the tenant, and to the crop raised on such premises; provided, however, this Article shall not apply in any way nor in any case where any person leases or rents lands or tenements at will or for a term of years for agricultural purposes where the same is cultivated by the tenant who furnishes everything except the land, and where the landlord charges a rental of more than one-third of the value of the grain and more than one-fourth of the value of the cotton raised on said land; nor where the landlord furnishes everything except the labor and the tenant furnishes the labor and the landlord directly or indirectly charges a rental of more than one-half of the value of the grain and more than one-half of the value of the cotton raised on said land, and any contract for the leasing or renting of land or tenements at will or for a term of years for agricultural purposes stipulating or fixing a higher or greater rental than that herein provided for, shall be null and void, and shall not be enforceable in any court in this state by an action either at law or in equity and no lien of any kind, either contractual or statutory, shall attach in favor of the landlord, his estate or assigns, upon any of the property named, nor for the purpose mentioned in this Article;" etc.

Then follow provisions which authorize a tenant who has paid more than the value of the percentage above specified to recover back double the amount so paid.

[2] Upon its face, this rental contract did not bind the tenant to pay more than the value of one-fourth of the cotton or one-third of the grain that might be raised on the rented premises. If the statute applies to contracts which do not provide for the payment of rent in a percentage of the crops, or the value of such percentage, then the validity of a contract in the form here under consideration must be determined by extraneous facts. One who undertakes to impeach the validity of a contract which is apparently lawful has the burden of proving its illegality. The only proof relied on in this instance is the undisputed fact that the amount of cotton charged as rent was in excess of one-fourth of the amount that was actually produced on the rented premises. But is that alone sufficient? We think not.

The proof showed that the premises consisted of 50 acres rented for agricultural purposes. In the absence of evidence to the contrary, we must assume that the entire tract was adapted to the growing of agricultural produce, and if properly cultivated would have yielded an average crop of cotton or grain. The proof also shows that only about one-third of the land was cultivated by the tenant. Why he did not cultivate the remainder, or what use he made of the land not cultivated, does not appear from the evidence. Neither is there any evidence tending to show that the exceedingly small yield harvested from the portion cultivated was an average of what that portion would, under ordinary conditions, produce.

[3] Like any other contract, the validity of a rental contract must be tested by the law and the conditions existing at the time the contract is made. It is either valid or invalid at its inception. It is then that the contract rights of the parties are fixed and become vested. To make the validity of such contracts depend solely upon the success or failure of the tenant in the cultivation of the rented premises, regardless of what might affect that success or failure, would lead to unreasonable and embarrassing confusion in the making of rental contracts.

The plain letter of the law is violated when the contract in terms stipulates for the payment of rent in a percentage of the crops which exceeds the limits fixed by the statute. The spirit of the law may be violated when the contract for the payment of what is commonly called "standing rent," either in money, or in a fixed amount of a commodity, which exceeds in value the legal percentage of what the rented premises would, by proper cultivation, yield under ordinary conditions. None of these facts is shown in this appeal. For that reason there was no basis for a finding that the contract violated the terms of the statute.

The trial court concluded that the amendment of 1915 was an unconstitutional invasion of the right of contract, and upon that ground rendered the judgment appealed from. As supporting that decision, he referred to the case of Rumbo v. Winterrowed (Tex. Civ. App.) 228 S. W. 258. The precise question here presented was not involved in that case. Under our view, it is not necessary to pass upon the constitutionality of the law in deciding the question presented on this appeal.

For the reasons stated, the judgment will be affirmed.