·FIRST NAT. BANK OF ANGLETON v. TIGNER et al.

No. 15419.

Court of Civil Appeals of Texas. Fort Worth.

April 24, 1953.

Rehearing Denied May 22, 1953.

Rucks, Enlow & Kee, of Angleton, for appellant.

Davis & Henderson, of Angleton, for appellees.

MASSEY, Chief Justice.

F. I. Warwick, a tenant farmer under contemplation of T.R.C.S. Article 5222, Vernon's Ann.Civ.St. art. 5222, as well as under contract of tenancy for agricultural purposes with his landlord, George H. Bingham, borrowed $1,500 from the First National Bank of Angleton, Texas, giving his note therefor and delivering as security chattel mortgages upon two tractors, alleged in the pleadings of this case to amount to a total value of $500.

During the period of the relationship of landlord and tenant of Warwick and Bingham, the landlord died intestate and leaving, as alleged by the pleadings, J. H. Tigner, W. N. Tigner, Jr., and Betty Bingham Muson as his sole and only heirs at law.

In the fall of 1950, upon default by F. I. Warwick on the note given to the First National Bank of Angleton, the said Bank, as plaintiff, filed suit upon the note for the indebtedness, interest and attorneys' fees provided therein, and for foreclosure of the chattel mortgage lien, as against the said Warwick as defendant. By proper procedure the Bank caused to be issued a writ of attachment which was executed in Brazoria County by its sheriff levying upon and taking into possession seven bales of cotton, property of the defendant and which cotton had been raised by him upon the premises leased by him from George H. Bingham in the year 1950. The cotton was in storage at time of the levy elsewhere than upon the leased premises, but at said time less than thirty days had expired subsequent to date the cotton was removed from the premises. The heirs at law aforesaid of George H. Bingham, deceased, administration upon whose estate had been opened, conducted and closed, filed their petition of intervention in the suit filed by the Bank, and as interveners asserted their rights as prior lienholders under provisions of Article 5222 as against the proceeds realized from the sale of the cotton in question, said proceeds amounting to $1,199.25. While the suit was pending, the defendant Warwick had waived any claim by him, leaving the actual controversy one between the plaintiff Bank and the interveners as to said $1,199.25. And the cotton had been sold for the above amount by agreement between the plaintiff, defendant and interveners, with the check payable jointly to the plaintiff and intervener J. H. Tigner, and left in escrow with the plaintiff Bank, subject to disposition under orders of the court based upon disposition of this suit.

From the record it does not appear that any judgment has ever been taken as against F. I. Warwick. However, as to the $1,199.25, it appears from sworn uncontroverted affidavits that all parties to the suit agreed that it should be either the interveners or the plaintiff Bank who would be entitled to this fund and apparently credit for it would be given the defendant on his indebtedness due to the party so entitled. And as to this fund motions for summary judgment were filed by both the plaintiff Bank and interveners and on October 31, 1952, both motions were heard by the court, and, under the theory that statutory landlord's lien attached as to the proceeds from the sale of the tenant's cotton, judgment was entered overruling the motion of the plaintiff Bank, and entered in favor of the interveners, as against the plaintiff, awarding title and possession of the check for $1,199.25 to the interveners, and the Bank was ordered to endorse and deliver the check to intervener J. H. Tigner. From this judgment the Bank appealed.

The written contract of lease between the landlord Bingham and tenant Warwick

was for a period of five years, beginning January 1, 1947, and the rental provided for the year 1950 by the terms of the contract was $3,000, payable on or before the first day of the calendar year of 1950. This was the year in which the cotton in question was raised on the leased premises. It appears that one-half the agreed rental had been paid, but there was due and owing by the tenant to the landlord or his heirs at law, the appellees, the amount of $1,500 on the lease contract. This contract was recited to have been made for agricultural purposes, but without qualification as to the nature of the crops to be raised by the tenant, and the landlord, under the lease, furnished the land only and, constructively, anything further necessary for production of any crops on the land would be furnished by the tenant. There were 300 acres of land provided for under the lease, and there is no showing as to what, if anything other than the cotton in question, was raised on the land in 1950. It does appear that the seven bales of cotton constituted all the cotton raised on the premises in 1950, and that it was raised on approximately one-third of the acreage leased. The contract terms do not provide for any contractual lien.

Article 5222 provides circumstances under which a landlord renting his lands to a tenant for agricultural purposes may be secured as to rents due or to become due in any determinable annual period by a statutory landlord's lien upon the crops grown on the land by or in behalf of the tenant. It likewise imposes conditions under which the lien shall attach to said crops. Furthermore, it provides by its terms conditions under which the landlord may lose his lien, even though it has attached.

■ As applied to the facts of this case, we may see that from the face of the contract the landlord's lien did initially attach to the cotton in question, and to the value thereof. The contract in this case, which provides for an annual rental of $3,000, payable in advance, for the premises leased, does not on its face bind the tenant to pay more than the value of one-fourth of the cotton or one-third of the grain raised on the leased premises, and one who undertakes to impeach the validity of a contract apparently lawful has the burden of proving its illegality. Lancaster v. Wheeler, Tex.Civ.App., 1924, 266 S.W. 795. In the case before us, the appellant never undertook to offer proof that the contract in question was actually illegal, and so the contract must be considered to have been legal at its inception, and the only question involved is as to whether events subsequent resulted in the losing of the landlord's lien.

■ Without question, by their interpleader to the original suit, the appellees charged and attempted to impose a charge constructively as against the tenant Warwick as rent or for application to the rental indebtedness under the contract, by enforcing a landlord's lien as against the cotton in question, the value of which under the circumstances of the case we may properly take to have been $1,199.25. The statute provides that the landlord shall not have this statutory lien on the crops of the tenant where he charges (*which we consider means to demand or require*) a rental of more than one-third of the value of the grain and by construction, hereinafter discussed, where he charges more than one-fourth of the value of the cotton raised on said land, in cases where the landlord furnishes only the land, as in this case. We are of the opinion that proper interpretation of the statute, as applied to the facts of this case, would be that in so far as the cotton raised on the leased land by the tenant (no showing having been made that grain was also raised), the landlord is secured in his lien so long as he does not attempt to impose a charge upon the cotton raised, or the value thereof, to be applied to the debt owing for rent, in excess of one-fourth of such cotton crop or its value. In other words, since the value of the cotton crop in this case is $1,199.25, the landlord's lien is secure and exists so long as he does not attempt to demand or require of his tenant more than one-fourth of such amount, or $299.81. However, when by his suit the landlord demands or requires or charges the tenant to deliver to him in excess of this amount (of the money obtained for the cotton) as rent— or to be applied upon the rent, which constructively is what has occurred in this

case, he loses the statutory lien that he has up to that time upon all the crops raised on the leased land. It is not the debt which is lost, it is the security for the payment of the debt.

There is prior authority for our holding. In Johnson County in 1939 a landlord contracted with his tenant for one-fourth of the cotton crop to be raised on the leased land, and for five dollars per acre on fifty acres of the leased land, upon which the tenant agreed to plant corn. It developed that the value of the corn raised on the fifty acres was approximately $440, one-third the value of which would be approximately $147, or $103 less than the amount of rental, in dollars, that the tenant agreed to pay for the fifty acres. The appellate court's opinion, pointing out that part of the statutory provision wherein it is provided that when the landlord, directly or indirectly, charges a rental of more than one-third the value of the grain raised on such land, held that under the facts the landlord had no statutory landlord's lien on the corn. The court further held that a third party holding a chattel mortgage lien upon the corn would prevail in a dispute between the landlord and the contract lienholder as to prior right to the proceeds from the sale of the corn. Citizens State Bank of Alvarado v. Schmauder, Tex.Civ.App., 1940, 139 S.W.2d 619.

■ However, as above mentioned, this conclusion is arrived at by construing the provisions of Article 5222 to mean that a tenant has reserved to him by its provisions, in cases such as this, two-thirds of the grain, or its value, and three-fourths of the cotton, or its value, grown on the leased premises. By Legislative action in 1874, as appears by Article 5475, Revised Statutes of 1911, it became the law in Texas that a landlord had a preference lien on the property of the tenant, without limitation. The statute in question has no preamble or enacting clause, and bears only the title as "An Act concerning rents and advances." In 1915, the Legislature passed an act purporting to repeal the prior law and to substitute in its place a statute entitled "Land Tenant Law—Prescribing Payment of Rentals in the Matter of Agricultural

Lands." In its preamble, the Legislature evidenced its intent by the following language: "An Act to amend Article 5475, of Title 80, of the Revised Civil Statutes of 1911, by adding thereto the following: 'Provided, however, that this Article shall not apply in any way nor in any case where any person leases or rents land or tenements at will or for a term of years for agricultural purposes where the same is cultivated by the tenant who furnishes everything except the land and where the landlord charges a rental of more than one-third of the value of the grain *or* more than one-fourth of the value of the cotton raised on said land; * * *.'" (Emphasis ours.) In the exclusionary section of the body of the statute, however, the same read "* * * where the landlord charges a rental of more than one-third of the value of the grain *and* more than one-fourth of the value of the cotton raised on said land: * * *." (Emphasis ours.)

By the decision in the case of Culberson v. Ashford, 118 Tex. 491, 18 S.W.2d 585, the amendment of 1915 was held to be void and of no effect in its entirety, since the amendment itself was an entirety. The basis of the unconstitutionality was shown to be the Fourteenth Amendment of the Federal Constitution, and of Sections 17 and 19 of article 1 of the Texas Constitution. The parts of the amendment, however, occasioning its unconstitutionality were shown to be provisions thereof wholly unrelated to the section of the amendment applicable to the case before us, and which section was re-enacted by the first Legislature holding a session subsequent to the date of the decision by the Supreme Court in 1931, and which law, in toto, now appears as our T.R.C.S. art. 5222. The entire law, as it appeared by the amendment of 1915, was re-enacted with the parts thereof deleted which occasioned its having been held unconstitutional by the Supreme Court.

However, the manner of treatment of the matter by the Legislature of 1931 was unusual. It recited as its subject or title, "Amending Landlord's Lien Law", and followed with the recitation in the preamble or enacting clause in the following language: "An Act amending Article 5222.

Revised Civil Statutes of the State of Texas for 1925, providing for a landlord's lien upon the properties and crops of a tenant for rents and advances; also upon the crops of the tenant where the landlord furnishes everything and the tenant furnishes the labor to make the crop."

The body of the statute followed, and, as will be noted from Article 5222, recited in its exclusionary section that the same should not apply " * * * where the landlord charges a rental of more than one-third of the value of the grain *and* more than one-fourth of the value of the cotton raised on said land; * * *." (Emphasis ours.)

Though the amendment of 1915 was held by the Supreme Court to have been in its entirety void and of no effect, the Legislature treated it in its action of 1931 as being a law in effect, which by its said action it was amending by deletion of the unconstitutional matter.

Had we been called upon to construe the present article with the preamble or enactment clause (to the extent same has been set forth as to the 1915 amendment) as it was set forth by the Legislature in 1915, the rules of construction of statutes would readily compel our construction of the law to mean that the tenant, when he did raise grain and/or cotton on leased land, had reserved to him two-thirds of such grain, or its value, and three-fourths of the cotton, or its value. The ambiguity of the body of the amendment would compel this.

▮▮▮ The title of the amendment now the law in Texas, particularly in view of the fact that so much of the language of the body is identical to the unconstitutional amendment of 1915, must be related back to the title of that 1915 amendment in order for it to have meaning and subject matter. In the enactment of statutes, earlier acts on the same subject are generally presumed to have been in the knowledge and view of the Legislature, which is regarded as having adopted the new statute in the light thereof and with reference thereto. Therefore, in the construction of a statute, reference may be made to earlier statutes on the subject, which are regarded as in pari materia with the later statute. A comparison of the prior law with the present is considered helpful in determining the true intent of the Legislature. And it has even been held that an earlier statute on the same subject which has expired or been repealed may be considered in construing an act of doubtful meaning. And it is frequently declared proper to take into consideration the history of legislation on the subject matter of the statute being construed. 50 Am.Jur., p. 354, sec. 354. In our construction of the statute we believe it proper to take into consideration the unconstitutional amendment of 1915 in order to determine the actual intent of the Legislature in 1931 when the present amendment was passed. When this is done, the conclusion is inescapable that in 1931 the Legislature intended to go just as far in limiting the application of the landlord's lien under the amendment as it could go, by the same means as in 1915, without re-enacting the provisions of the old law which had occasioned its unconstitutionality. The policies of the two Legislatures were unquestionably the same, and the policy of the first may be considered in the interpretation of the act of the second. 39 Tex.Jur., p. 232, sec. 124. The first act, or attempted act by the Legislature, became legislative history referable, in light of the latter act, to ascertain the legislative intent. 39 Tex. Jur., p. 225, sec. 120.

In view of the existence of the agreement between the parties to this appeal, and with Mr. Warwick, the tenant, the judgment of the trial court relating to the rights of the appellant and interveners is reversed and rendered, and judgment is here rendered in favor of appellant as against appellees, and it is ordered that appellee J. H. Tigner endorse and deliver to the appellant the check in the amount of $1,199.25, representing the proceeds from the sale of the cotton, to be credited upon the indebtedness of Warwick due appellant.