J. H. TIGNER ET AL V.
FIRST NATIONAL BANK OF ANGLETON

No. A-4258. Decided January 27, 1954.
(264 S.W. 2d Series 85)

70

*Davis & Henderson* and *John C. Henderson,* all of Angleton, for petitioners.

Petitioners, having established their landlord lien upon the entire crop, are entitled to recover because respondent failed to assume its burden of proof and also prove the value of all the crops grown on the leased premises in 1950, and the Court of Civil Appeals erred in holding otherwise. Spence v. Fenchler, 107 Texas 443, 180 S.W. 597; Lane v. Bell, 115 S.W. 918, writ refused; 39 Texas Jur. 194.

*Rucks, Enlow & Kee* and *Leland B. Kee,* all of Angleton, for respondent.

The landlord's lien having been created by statute, the burden of proof is upon the landlord to prove that its contract with the tenant is within the class of contracts for which the statute provides a lien. Hawthorne v. Coates Bros., 202 S.W. 804; Citizens State Bank of Alvarado v. Schmauder, 139 S.W. 2d 619; Gillett v. Talley, 60 S.W. 2d 868.

MR. CHIEF JUSTICE HICHMAN delivered the opinion of the Court.

This is a contest between the heirs of a landlord and an attaching creditor involving the question of priority of liens. The trial court rendered summary judgment in favor of the heirs, and the Court of Civil Appeals reversed that judgment and rendered summary judgment in favor of the creditor on its cross motion. 258 S.W. 2d 153.

Respondent, First National Bank of Angleton, instituted this suit against F. I. Warwick upon a promissory note and caused a writ of attachment to be issued and levied upon seven bales of

cotton grown by Warwick as a tenant under a contract with George H. Bingham as landlord. The cotton was removed from the rented premises less than thirty days before the attachment was levied. No question is presented as to the regularity of the attachment proceeding. A plea of intervention was filed by the heirs of George H. Bingham, deceased, alleging that by written lease, dated October 19, 1946, Bingham leased to Warwick approximately three hundred acres of land for farming purposes for a term of five years, beginning January 1, 1947, at a rental of $2,500.00 for the first year and $3,000.00 payable annually in advance for each of the succeeding four years; that of the $3,000.00 rental to be paid in advance on January 1, 1950, for the ensuing calendar year only $1,500.00 had been paid, leaving an indebtedness owing by Warwick of $1,500.00 as rental for that year, "which sum was secured by a statutory landlord's lien upon all crops grown upon the premises described in said lease." It was alleged that Warwick planted approximately one hundred acres of the leased premises in cotton during that year, and that the seven bales of cotton covered by the attachment was all the cotton grown by him during that year.

It was further alleged that the plaintiff, the defendant, and the intervenors had agreed that the cotton should be sold free and clear of any lien and that the proceeds of such sale should be evidenced by a check payable jointly to the bank and the intervenor J. H. Tigner, and that "if the lien of the intervenors, if any they had, should be determined to be then superior and prior to the attachment lien claimed by the plaintiff, Intervenors should be entitled to the proceeds of the sale of said cotton to the extent of the indebtedness due them by defendant, and, likewise, if the lien of the plaintiff, if any it had, be determined to be then superior and prior to that claimed by Intervenors, it should recover the proceeds of the sale of said cotton to the extent of the indebtedness of defendant to it." Pursuant to the agreement the cotton was sold for $1,199.25, and the check is being held by the bank awaiting the outcome of the suit. The defendant, Warwick, filed no answer and made no appearance in the case. The intervenors filed a motion for summary judgment, and in support thereof filed an affidavit which, in substance, stated as facts the allegations in their plea of intervention. The bank filed a cross motion for a summary judgment. As noted above, the trial court granted intervenors' motion and denied the cross motion of the bank, while the Court of Civil Appeals granted the bank's cross motion and denied the motion of intervenors.

Intervenors have neither a common law lien nor a contract

lien. They rely solely upon their claim of a statutory lien under Article 5222 of the Revised Statutes as amended in 1931 (Vernon's Annotated Civil Statutes, Art. 5222). We are, therefore, called upon to construe that staute, the provisions of which material to this case being as follows:

"All persons leasing or renting lands or tenements at will or for a term of years shall have a preference lien upon the property of the tenant, as hereinafter indicated, * * * whether the same is to be paid in money, agricultural products or other property; and this lien shall apply * * * to the crop raised on such premises. * * *

"This article shall not apply in any way or in any case where any person leases or rents lands or tenements at will or for a term of years for agricultural purposes where the same is cultivated by the tenant who furnishes everything except the land, and where the landlord charges a rental of more than one-third of the value of the grain and more than one-fourth of the value of the cotton raised on said land; * * * and any contract for the leasing or renting of land or tenements at will or for a term of years for agricultural purposes stipulating or fixing a higher or greater rental than that herein provided for shall not carry any statutory lien nor shall such lien attach in favor of the landlord, his estate or assigns, upon any of the property named, nor for the purpose mentioned in this article."

This article was amended in 1915, but the amendment was declared unconstitutional in Culberson v. Ashford, 118 Texas 491, 18 S.W. 2d 585. The provision of that amendment which condemned it was "any contract for the leasing or renting of land or tenements at will or for a term of years for agricultural purposes stipulating or fixing a higher or greater rental than that herein provided for, shall be null and void, and shall not be enforceable in any court in this State by an action either at law or in equity, and no lien of any kind, either contractural or statutory, shall attach in favor of the landlord, his estate or assigns, upon any of the property named, nor for the purpose mentioned in this article."

The amendment of 1931, which is embodied in the second paragraph of the present article, does not deal at all with the validity of rental contracts, but only with statutory liens in cases like the instant one where no lien is fixed by contract. It does not undertake to limit the right of parties to contract. In construing the statute our sole concern, therefore, is to find under what conditions the statute creates a lien in favor of a landlord who did

not create one by contract. The validity of the rental contract in this case is not questioned by us.

■ The question of who carries the burden of proof is not in the case as it comes to us. That would arise only upon a trial of the case upon its merits. The failure of one party in a hearing upon a motion for summary judgment to discharge the burden which would rest on him at a trial on the merits is no ground for a summary judgment in favor of the other party. In order to be entitled to a summary judgment, the burden rests upon the landlord to prove that he is entitled thereto as a matter of law. (Rule 166-A, Texas Rules of Civil Procedure.) When both parties move for a summary judgment, the burden is upon each to prove clearly his right thereto, and neither party can prevail because of the failure of the other to discharge his burden. Steinberg v. Adams et al, 90 Fed. Supp. 604; Walling v. Richmond Screw Anchor Co., 2 Civ. 154 Fed. 2d 780; Federal Practice and Procedure, Barron and Holtzoff, §§ 1235 and 1239; Moore's Federal Practice, Vol. 6, § 56.13.

■ We cannot adopt the theory that, since it cannot be determined until after crops are harvested whether the rental charge exceeded the value of one-third the grain plus one-fourth the cotton, the Legislature intended that the amendment should not apply when the contract is for money rent. That theory was rejected by the Waco Court of Civil Appeals in a well-reasoned opinion in Citizens State Bank of Alvarado v. Schmauder, 139 S.W. 2d 619, and by clear implication was rejected by this court in Culberson v. Ashford, 118 Texas 491, 18 S.W. 2d 585. We have examined the record in the last mentioned case, and it discloses that the very reasoning upon which that theory is based was rejected therein. The tenant brought suit in the justice court against his landlord for double the amount of money rent paid by him. The rental contract was for $5.00 per acre rent on ten acres of land planted in cotton. The value of the cotton harvested on the land that year was $100.00. The tenant, having paid $50.00 as rent, sued under the amendment of 1915 for double that amount. There was an additional issue in the case concerning a $22.00 payment, but that is immaterial here. Upon a trial of the case the landlord, over the objection of the tenant, was permitted to testify that the land on an average year would have yielded cotton of the value of at least $200.00. The question at issue, and the only question, was whether the provisions of the amendment of 1915 were applicable to that contract for money rent. The trial court held that the amendment was not applicable, and the tenant appealed. The landlord filed no brief in the Court of

Civil Appeals nor in this court, and no question as to the validity of the amendment was raised in the Court of Civil Appeals. The position of the tenant before that court was that after the crop was harvested it was disclosed that the rental charge was one-half the value of the cotton, and that, therefore, he was entitled to recover, and that the trial court erred in admitting the testimony of the landlord about what crops the land would have made on an average year. The Court of Civil Appeals certified the question of the constitutionality of the statute to this court. In the certificate the Court of Civil Appeals stated that in its opinion the appellant (tenant) was entitled to have the case reversed if the statute referred to was constitutional. In other words, it held that the statute was applicable. In answer to that question this court held that the amendment was unconstitutional. Had this court been of the opinion that the statute was inapplicable, it would not have answered the question and passed on the constitutionality of the statute. This court will not answer an abstract question of law submitted in a certificate from the Court of Civil Appeals. Owens v. Tedford, 114 Texas 390, 269 S.W. 418; County Democratic Executive Committee v. Booker, 122 Texas 89, 52 S.W. 2d 908; Uvalde Rock Asphalt Co. v. Hightower, 135 Texas 410, 144 S.W. 2d 533. That rule has very special application when the question certified is the constitutionality of a statute, for, as stated in 11 American Jurisprudence, Constitutional Law, § 93:

"One of the most firmly established doctrines in the field of constitutional law is to the effect that a court will pass upon the constitutionality of a law only when necessary to the determination upon the merits of the cause under consideration. The constitutionality of a statute will not be considered and determined by the courts as a hypothetical question, because constitutional questions are not to be dealth with abstractly or in the manner of an academic discussion."

In deciding Culberson v. Ashford this court had before it not only the certificate from the Court of Civil Appeals stating its views on the construction of the statute, but the brief of the tenant which presented only the question of the applicability of the amendment to the money rent contract. It appears certain that this court agreed with the Court of Civil Appeals that the amendment was applicable, as otherwise it would have declined to consider the certified question. While that ruling was based upon the amendment of 1915, and not the amendment of 1931, that fact is immaterial because the language of the first part of the 1915 amendment which defines its scope and applicability is

identical with the language of the first part of the 1931 amendment.

■ But independent of authority we think that the staute clearly provides that the exception in paragraph two is applicable to contracts for money rent the same as in contracts for rent in kind. The first paragraph provides for a landlord's lien on the crops grown by the tenant under a rental contract, "whether the same is to be paid in money, agricultural products or other property." The three types of contract are grouped and placed in the same category. The next paragraph begins with this emphatic language: "This Article shall not apply in any way * * * where the landlord charges a rental of more than one-third of the *value* of the grain and more than one-fourth of the *value* of the cotton." (Emphasis ours.) That language in our view cannot be construed to mean that this Article shall apply when rent is payable in kind, but shall not apply when it is payable in money. It must apply to all three types of contracts or to none. The use of the word "value" indicates that the Legislature more specifically referred to contracts for money rent than to contracts for rents payable in kind. This for the reason that the value cannot be ascertained until after the crops are harvested. The word "value" has no place in measuring rent payable in kind.

■ While we are dealing with the question of a statutory lien, in reality the question is exactly the same as if we were dealing with a contract lien, for the reason that, since the landlord did not see fit to reserve a lien in his contract, the statute is read into it, with the result that the parties contracted as follows: The landlord shall have a lien upon the cotton and grain grown upon the premises, provided the value of one-fourth the cotton and one-third the grain produced equals $3,000.00 or more, but if less than that amount, he shall have no lien. That language does not mean the same as if it provided that the landlord shall have a lien regardless of the value of the crops produced.

It is fully realized that this amendment has to do only with cotton and grain, but, if the summary judgment is to be affirmed, we must assume that only cotton and grain were cultivated on this land, for, if the amendment is not applicable, it is immaterial what was planted.

The amendment is difficult of application in many situations. It would appear that the statute would not invalidate a statutory landlord's lien on crops other than cotton and grain, regardless of the amount of rental agreed upon, but it does not follow that

because the statute may give the landlord a lien on those crops, regardless of the amount of money rent charged, it therefore gives him a lien when the only crops produced are cotton and grain. Statutory liens are not created in that way. They must find bases in express language. If and when a case comes to this court in which a portion of the rented premises was planted in crops other than grain and cotton, we will be called upon to decide whether or not the landlord's lien covers the whole or any part of the crops. That question can certainly not be decided in this summary proceeding.

Until the facts are developed disclosing what crops were raised on this land, and the value thereof, it is impossible to determine whether the landlord has any lien at all, and for that reason the judgments of both lower courts are reversed and the case is remanded. One half the costs of appeal are assessed against petitioners and one half against respondent.

Opinion delivered January 27, 1954.

MR. JUSTICE GARWOOD concurring.

Like Judge Griffin I think the exception portion of the statute quite extraordinary in its consequences, if we apply the construction given by the court to various other fact situations readily imaginable. Nor, in my opinion, does proper judicial technique exclude this method of testing the soundness of a particular construction merely because we may thus think about situations not themselves before the court. On the other hand, I am unable to give the exception any meaning at all unless by adopting the construction chosen by the court; and it is almost too much to accuse the legislature of saying nothing at all, despite its use of a considerable number of serious sounding words. Under these circumstances it would seem justifiable to rely on the implication from Culberson v. Ashford, cited by the court, even though one does not know by what process the implied conclusion in question was reached. I therefore concur in the opinion of the court to the extent that it rests on the decision mentioned.

Opinion delivered January 27, 1954.

MR. JUSTICE GRIFFIN joined by JUSTICE SMITH dissenting.

I find myself unable to agree that an owner of land renting the same for cash (or "standing" rent, as it is usually referred to) has no statutory landlord's lien upon the crops grown upon

the rented premises to secure the payment of such rent due for a current year. To hold that the existence of a statutory lien cannot be determined until all of the cotton and grain produced on the land during the rental year has been harvested, and then if one-fourth of the cotton and one-third of the grain is less in value than the standing rent agreed upon, the land owner has no statutory lien, is to make a holding not called for by the statute in question (Art. 5222, Vernon's Annotated Civil Statutes). The existence *vel non* of a lien (and by lien I mean a statutory lien) depends, among other things, upon the existence of the relation of landlord-tenant. This lien is held to attach at the time of the making of the contract, and in the case of crops, from the commencement of their growth, regardless of whether the rent is then due. 32 Am. Jur. 470, Sec. 579; 52 C. J. S. 464, Sec. 623. To hold that an efficient tenant may cause the landlord's lien to be valid, whereas an inefficient tenant may defeat the lien, is to fail to apply the proper rule. At the beginning of a crop the landlord either has a lien, or he does not have a lien, and the vagaries of a tenant, the weather, or the market price of the product at the time it is marketed, should not affect the lien, or change the law protecting the landowner.

"Like any other contract, the validity of a rental contract must be tested by the law and the conditions existing at the time the contract is made. It is either valid or invalid at its inception. It is then that the contract rights of the parties are fixed and become vested. To make the validity of such contracts depend solely upon the success or failure of the tenant in the cultivation of the rented premises, regardless of what might affect that success or failure, would lead to unreasonable and embarrassing confusion in the making of rental contracts." Lancaster v. Wheeler, Texas Civ. App., 266 S.W. 795 (3), no writ history.

See also Rumbo v. Winterrowd, Texas Civ. App., 228 S.W. 258, no writ history; Twentieth Century Associates v. Waldman, 294 N.Y. 571, 63 N.E. 2d 177, 162 A. L. R. 202. In the case at bar the lease contract was for a term of five years at an annual rental agreed upon. The facts show that the tenant planted only 100 acres to cotton. There was a total of about 300 acres covered by the rental contract. The year involved seems to have been a poor cotton year, and it is contended by respondent Bank that no lien was given. Had the year been a good cotton year, and the price equal to or more than the present price, a lien would have been good. Under the majority holding no lien would attach even though the remaining two hundred acres had been planted to fine producing, high-priced crop other than grain, which brought

the tenant $100.00 per acre in crops. To uphold the majority view is to hold that it could not be determined whether or not a lien was given to the landlord, who had rented his land for cash rent, until the end of the crop year and all the cotton and grain had been harvested and its value determined. At that time—the end of harvest of all crops—and at that time only would the landlord, tenant, or creditors of the tenant know whether or not the statutory lien was valid. Some grain crops come off in early spring and most of the cotton is not gathered until fall and winter. All crops which have been removed from the premises for more than one month are freed from the landlord's lien by virtue of Art. 5223, Vernon's Annotated Civil Statutes. By the time all cotton had been gathered and the existence of a lien determined, there would be no grain on which the landlord could foreclose his lien—should it be determined under respondent's contention to be a valid lien—on any of the grain. The Legislature, in passing the 1931 amendment to the landlord's lien law, surely did not intend that the existence of a lien in favor of the landlord depend upon such uncertain foundation. If the statute is given this effect it would be void. To prevent it being void, it must be held that the statute does not except standing rent (cash rental) contracts from those under which the landowner has a lien to secure the rentals. I agree with the case of Culberson v. Ashford, 118 Texas 491, 18 S.W. 2d 585, where it says: "* * * The amendment of 1915 to our Texas Statute, Article 5475, contains no provision whatever for giving consideration to the differences in value of property or the property rights involved. Said amendment fixes an arbitrary standard. It does not provide for fair or reasonable returns or take into account the value of a piece of property, the improvements upon it, or its location. * * *" Nowhere in this case (Culberson v. Ashford, supra) does the court pass upon the question here decided. That case did not involve a renting of lands for standing rent. The contract was on a crop basis for a large part of the land, and cash basis for only a portion of the farm. This Court did not hold that you must take the value of all crops and add them together, and then determine whether or not a landlord's lien was valid. It specifically held that all of the 1915 amendment was unconstitutional and void, including the provision therein contained in the second paragraph setting aside the statutory lien in certain cases. That case was one that reached this Court through a certified question, and it is well settled that this Court only has jurisdiction of those questions contained in the certificate of the Court of Civil Appeals sending the case to this Court. Slater v. Ellis County Levee Improvement Dist. No. 9, 120 Texas 272, 36 S.W. 2d 1014(7), 3A Texas Jur. 359, Sec. 282. No question as to the

validity of a standing rent contract was certified, nor could have been decided by this Court in the Culberson case. The Supreme Court, on certified questions from the Court of Civil Appeals, is limited to the precise matters involved in the questions. Snyder v. Baird Independent School Dist., 102 Texas 4, 113 S.W. 521; State v. Duke, 104 Texas 355, 137 S.W. 654, 138 S.W. 385; Clary v. Hurst, 104 Texas 423, 138 S.W. 566; Sims v. State, ex rel. Isensee, et al, Tex. Com. App., 12 S.W. 2d 540; Turman v. Turman, 123 Texas 1, 64 S.W. 2d 137. In Clary v. Hurst, supra, the Court said: "It will be understood that our answer will relate solely to the very question presented, and that neither by implication nor otherwise are we to be understood as expressing any opinion upon any other question which may arise from the facts stated."

A check of each of the above cases in Shepard's Southwestern Reporter Citations shows that none of the above cases has been questioned or overruled. In the face of this situation, I am unable to agree that Culberson v. Ashford is any authority whatever to support the application given it in the majority opinion. The reasoning in the Culberson case should be applied to the statutory lien, the same as a contract lien. The majority opinion says we would have the same question if a contract lien were involved because the statute was written into the present contract. If the majority holding is to the effect that had a contract lien been included in the rental contract, same would be void if the rental charged exceeded one-third the value of grain and one-fourth the value of the cotton, such holding, in my opinion, is directly opposed to our holding in Culberson v. Ashford, supra. I cannot make that case mean anything except that a contract seeking to limit rental charged to value of one-third of grain and one-fourth of cotton is unconstitutional, void and fixes an arbitrary standard. Unless Culberson v. Ashford held contract liens of the character under discussion unconstitutional and void, there was no need for the 1931 amendment. All of the majority's reasoning as to the 1931 amendment falls, and throws no light on our problem of the validity of the statutory lien.

"The lien herein considered is said to be founded upon the broadest kind of policy to protect the landlord in the payment to him for the fruits and revenues issuing from the leasing of his property. 'The courts ought not to refine his substantial rights away by giving effect to form, and denying it to substance.' It 'will not be subjected to a more rigid interpretation than that given by the courts to contract liens.' 'Whatever may be the view which the courts of other states take toward the

statutes of those states fixing landlord's liens, that lien has ever been a favorite of the courts of this state, and all persons dealing with tenants are charged with knowledge of the rights of the landlord in the premises which are to protect against the lienable goods of the tenant the payment to him of the consideration for which he leases the premises.' " 27 Tex. Jur. 103, Landlord and Tenant, Section 40.

The constitutionality of the 1931 amendment is not attacked, and we express no opinion upon that feature of the cause but must assume that it is constitutional for the purposes of this cause.

Art. 5222, Vernon's Annotated Civil Statutes, in the first paragraph undoubtedly and unquestionably gives a landlord renting for standing rent a statutory lien upon the crops produced by the tenant upon the rented premises. The second and last paragraph purports to set aside the statutory lien in certain cases where the first paragraph gives the lien. In other words, this second paragraph describes a certain kind of rental contract which is excepted from the operation of the lien set out in the first paragraph. It exempts from the landlord's lien only those rent contracts where the rental is paid in cotton and grain. It would clearly not apply to a rent contract covering land, all of which was to be worked in alfalfa, black-eyed peas, castor beans, vegetables, or the many other crops now grown on present day Texas farms besides cotton and grain. Under present Federal control of prices in cotton and grain, government regulations limit the acreage in cotton and grain that may be grown on a tract of land. To refuse a lien to the landowner when government rules prevent sufficient cotton and grain to be grown on the land so that the one-third and one-fourth of these two crops equal the standing rental charged, would be to cause State and Federal government to be working at cross purposes. Likewise, there is no provision in the second paragraph of the statute dealing with a standing or cash rental contract and such a rental contract is not mentioned in the exception provision. It will be observed that in the first section of Art. 5222, a lien is given to "all persons leasing or renting land or tenements * * * whether the same (rental) is to be paid in *money,* agricultural products, or other property * * *." (Emphasis added.) In the exception paragraph wherein the Legislature defines those contracts which will not be secured by a lien, it is stated that the article shall not apply where the landlord "charges a rental of more than one-third of the value of the grain and more than one-fourth of the value of the cotton raised on said land * * *." The exception

provision does not provide that those contracts for money rental shall be without the protection of a lien. In my opinion the omission of the Legislature to so provide is very significant. For this reason, the rental contract in the present cause comes within the general lien provisions of the first paragraph, and not within the exceptions mentioned in the last paragraph. As stated in 39 Tex. Jur. 194, Statutes, Section 102:

"A proviso contained in the same clause or in a subsequent clause of a statute that is invoked is a matter of defense, and need not be negatived by a plaintiff seeking relief given by the statute."

It is well settled that where a statute defines a general rule, and then provides an exception, or exceptions thereto, the statute shall apply in all cases not specifically set out in the exception. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S.W. 2d 56 (14) ; Gulf, C. & S. F. Ry. Co. v. Temple Grain & Hay Co., 122 Texas 288, 58 S.W. 2d _7 (3) ; Broughton v. Humble Oil & Refining Co., Tex. Civ. App., 105 S.W. 2d 480 (5), writ refused.

It being stipulated in the trial court between the petitioner and respondent that the party having a superior lien should recover the proceeds of the sale of the cotton, I would affirm the judgment of the trial court.

Opinion delivered January 27, 1954.