**S. L. HARGROVE, Appellant,**

**v.**

**A. B. CORNETT ESTATE, Appellee.**

No. 13033.

Court of Civil Appeals of Texas.

San Antonio.

June 6, 1956.

Rehearing Denied July 11, 1956.

Greenwood & Russell, Harlingen, for appellant.

Carter, Stiernberg & Skaggs, Harlingen, for appellee.

POPE, Justice.

This appeal concerns the priority of liens on a cotton crop. In 1949, the Cornett Estate, herein called landlord, rented 1,300 acres of farm lands to Don Mitchell, herein called tenant. Tenant agreed to pay $19,-209.60 rental, one-half in cash and the balance out of cotton sales. The written lease was for one year and gave the landlord a "landlord's lien and a chattel mortgage lien" on one-fourth of all crops. The contract was recorded and still is. In 1950, the lease, was extended by written contract for one year. In 1951, it was again extended. The extension agreements carried forward all terms of the original lease, but they were not recorded. Tenant did not have the funds with which to pay the cash portion of the 1951 rentals, so he obtained an advance of $9,951.23 from S. L. Hargrove, doing business as Hargrove Gin. Hargrove, on behalf of tenant, paid that sum of money to landlord and tenant agreed to pay the remaining $9,219.20 by September 1, 1952, after the cotton was picked and ginned. Hargrove, to protect his advance of money, took a lien on the tenant's cotton crop. Hargrove ginned the cotton and sold it for tenant. He saw that the crop would not be sufficient to pay the tenant's various debts, so he kept out of cotton sales the sum of $9,219.20, which he had advanced,

and contends that the landlord had no prior mortgage. All parties moved for summary judgment. The court granted the landlord's motion and gave judgment against Hargrove, doing business as Hargrove Gin.

The case is before us on three points. The first two urge that fact issues were raised whether Hargrove had actual knowledge or notice of the unrecorded mortgage. The third point urges that the landlord failed to show other essential elements of its cause of action, such as the debt, its nonpayment, the original mortgage and its extensions. These are the only points briefed and we affirm the judgment.

■ Whether Hargrove had notice or knowledge of a pre-existing mortgage in favor of landlord is foreclosed against Hargrove by his own declarations and statements. When he took a mortgage from tenant, his own writing acknowledged a prior mortgage in favor of the landlord in these words:

"But it is expressly agreed that as to the crops grown on Tract No. 2, the mortgage of mortgagee shall be inferior and subordinate to the landlord's lien on an undivided ¼th interest therein, and to the mortgage in favor of Valley Production Credit Association * * *."

Landlord makes no claim to a statutory lien under the provisions of Article 5222, Vernon's Ann.Civ.Stats. It relies upon the original lease with tenant which gave it a "landlord's lien and a chattel mortgage lien" on one-fourth of all crops. The lease and all its provisions were extended, of which fact landlord says that Hargrove had full knowledge or notice. The quoted portion of Hargrove's lien is an express acknowledgment that his lien was inferior and subordinate to a lien owned by the landlord. In his deposition, Hargrove also declared, concerning his understanding of the situation. "He (tenant) had agreed to pay the landlord one-fourth until he had the second half paid, and I was to get the fourth

after that and after he had the Valley Production paid; I was to get all the rest of it until I was paid." He further stated: "Well, presumably I would come in second behind Cornett (landlord) for the second half." These declarations by Hargrove show that Hargrove knew that he would be subordinate and behind the claim held by landlord. Additionally, Hargrove knew that tenant was in possession of landlord's land and that his original one-year term had been extended. He knew the terms of the rent and actually paid half of it for the tenant to the landlord.

■ Whether one has knowledge or notice of a prior lien is a question of fact, but facts may establish knowledge or notice as a matter of law. O'Ferral v. Coolidge, 149 Tex. 61, 228 S.W.2d 146; Gaston & Thomas v. Dashiell, 55 Tex. 508. Hargrove argues that the declaration about his lien's being inferior and subordinate to the landlord's referred to the statutory lien and not a contractual lien. The meaning of Hargrove's written instrument we also consider a law question rather than a jury question.

Hargrove reasons that when he acknowledged a prior "landlord's lien" he meant a statutory lien only. Such a restriction of meaning does violence to the usual classification of the term. Landlords' liens are classified to include either contractual or statutory liens. American Jurisprudence classifies landlords' liens, first, as those reserved in a lease, 32 Am.Jur., Landlord and Tenant, § 566; and, second, as those provided by statute, 32 Am.Jur., Landlord and Tenant, § 575. This is the usual classification. 52 C.J.S., Landlord and Tenant, §§ 606, 619; 16 R.C.L., Landlord and Tenant, §§ 489, 497. The term is explained in 27 Tex.Jur., Landlord and Tenant, § 39: "A landlord's lien upon property of his tenant exists by virtue of contract between the parties or by reason of its being accorded to the landlord by statutory enactment. * * * Hence, one who claims a lien must demonstrate that his asserted right arises out of contract or that the statutory pro-

visions apply to his case; if he does not do this, his contention is not sustainable." Tigner v. First Nat. Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85, 86, in determining whether a landlord possessed a lien, mentions for exclusionary purposes the fact that "Interveners have neither a common-law lien nor a contract lien. They rely soly upon their claim of a statutory lien under Article 5222 * * *." We conclude that Hargrove, in making his lien expressly subordinate to the "landlord's lien," did not confine that term to the statutory lien, but meant a lien owned by the landlord.

Hargrove also had constructive notice of the lien, through the terms of the original recorded lease, which contained this clause:

"If Lessee should hold said land or any part thereof beyond August 31, 1950, without the written consent of Lessor, then and in such event, Lessee agrees to pay Lessor at Harlingen, Texas, as liquidated damages the sum of $200.00 per day for each day that Lessee holds possession of all or any part of said land beyond August 31, 1950, without a new written agreement, and as security for such sums, Lessee hereby gives to Lessor a mortgage on all crops raised by Lessee in Cameron County, Texas, after August 31, 1950."

The original lease required any continued possession to be in writing, and tenant was in possession. The original lease provided in the event tenant made no new writing, that landlord would have a mortgage on all tenant's crops. Hence, Hargrove had notice either that landlord had a mortgage on all future crops or that the tenant had a new writing. That writing was readily available. The new contract with tenant also reserved the contractual lien. This was constructive notice to Hargrove. South Texas Implement and Machinery Co. v. Anahuac Canal Co., Tex.Civ.App., 269 S.W. 1097.

Hargrove's final point is that the court erred in holding that the landlord had a chattel mortgage. The point is briefed to prove that no showing was made of the actual instruments nor of other elements of the cause of action. All elements, including the instruments, are shown by affidavits and are in the record. We do not consider valid the complaint that the showing is made by the affidavit of landlord's attorney rather than by landlord. The attorney was actually handling all the transactions for landlord, who was an estate consisting of numerous non-residents. Payments under the lease were required to be made at the attorney's office. He was the one who possessed the facts. Had Hargrove considered the other elements issuable, he should have countered landlord's showing.

The judgment is affirmed.