**Amos L. HEROLD, Appellant,**

v.

**CITY OF AUSTIN, Appellee.**

No. 10536.

Court of Civil Appeals of Texas.

Austin.

Jan. 22, 1958.

Rehearing Denied Feb. 5, 1958.

Second Motion for Rehearing Denied
Feb. 26, 1958.

Alfred M. Scott, Austin, for appellant.

Doren R. Eskew, City Atty., Robert J. Potts, Jr., Asst. City Atty., Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a summary judgment.

Appellant on March 12, 1957, filed a suit against the City of Austin for $14,683 as claimed compensation for alleged personal services rendered, sketches prepared and delivered and ideas sold and furnished by Herold to the City and adopted and used by the City and its architects in the improvement of plans for the erection of The Austin Municipal Auditorium and for attorneys' fees.

On April 2, 1957, the City filed a motion for summary judgment verified and accompanied by an affidavit, alleging that there was no genuine issue as to any material facts and that the City was entitled, as a matter of law, to a judgment denying Herold any relief.

The motion states that the City had executed contracts with certain architects to execute plans and specifications for the construction of an auditorium and that if any idea or claim for compensation made by appellant is to be found in the final plans such was procured by the architects, for allegation was made that appellant had not pleaded that he is licensed to practice architecture under the provisions of Article 249a, Vernon's Annotated Civil Statutes.

The affidavit made by the Assistant City Manager referred to the contract with the architect, and as to public hearing.

There is attached to the motion an excerpt from the Minutes of the City Council on June 9, 1955, as follows:

"Mr. Amos Herold submitted a plan to the Council whereby he believed would add 1000 additional seats in the proposed Auditorium, increasing the seating capacity to 8,000, and effecting a savings of $300,000. His plan involved moving the stage forward 12–16′ and widening the auditorium 8′ on each side. The matter was deferred

until the afternoon meeting with the Architects."

At 2:30 P.M. on the same day:

"The Council resumed its meeting with the architects for the Auditorium. * * * Mr. Amos Herold submitted his plans in detail to the Architects. Mr. Page, after going over the plans, explained difficulties encountered in the accoustical problems—structural rearrangements—safety in a certain amount of passageway. * * * With the promise that the Architects will consider the Jaycee's suggestion in regard to the kitchens, and they had Mr. Herold's suggestions to consider and exchange ideas with Dr. Boner, Mr. Lane, and the Drama Departments Councilman Pearson moved that they instruct the Architects to proceed with the plans and consider the suggestions. The motion, seconded by Councilman White, carried by the following vote. * * *"

On April 4, 1957, plaintiff filed a counter affidavit in rebuttal to defendant's motion for summary judgment, which is long but states that there are material controverted issues of fact as alleged in his petition; that plaintiff stated to the City Council that he would reveal his proposals to the Council and the architects solely upon the condition that the City would pay him 5% of the cost of the salvaged space if his ideas were adopted and used and resulted in monetary saving to the City, and that the City Council did approve the contract with plaintiff and accepted his proposal of compensation equal to 5% of savings to the City for divulging his ideas and suggestions by passing the resolution (hereinabove set out); that the cause has been set for hearing and a jury fee paid, and an answer to the merits had been filed with several special exceptions, none of which had been ruled on prior to the hearing on the motion for summary judgment and an opportunity afforded plaintiff to amend his pleadings.

On April 25, 1957, defendant's motion for summary judgment and plaintiff's reply thereto were heard and the Court granted the motion and ordered that plaintiff take nothing by his suit, such order having been made on the 29th day of April, 1957.

The appeal is based on sixteen points assigned as error and are to the tenor that the Court failed to rule on appellee's seven special exceptions to appellant's amended petition, and thereby preventing an opportunity to amend; in failing to give effect to appellant's oral deposition, request for admission of facts; in coercing appellant's counsel to admit appellant was not a licensed architect; in sustaining the appellee's motion for summary judgment; in depriving appellant of a jury trial on the controverted issues of fact; in failing to specify what facts were with appellee; in qualifying appellant's bills of exceptions; in rendering judgment that appellant take nothing and finally in sustaining appellee's motion for summary judgment on any or all grounds set forth in such motion.

The prime question before us is the propriety of the granting of the summary judgment when there were controverted fact issues to be determined.

In the motion for summary judgment filed by the City the statements are made that at no time have specific detailed requirements been laid upon the architects so as to inhibit their free choice of the means to execute their commission to design a municipal auditorium and that the City retained no right of direction in the execution of the work.

That "if any idea contained in any plan, or any professional services, or any other claim for compensation or for damages made by plaintiff herein in his petition is to be found, directly or by derivation, in the final plans for the auditorium furnished the City by the architects named herein, same was procured by the said architects to their

own ends and not by or under any instruction given by the City as owner or by any agent thereof to the architects in the execution of their professional services under the contract hereinbefore mentioned.

"As an alternative ground for summary judgment in favor of defendant herein, defendant would respectfully show the court that plaintiff's claim is for 'proposals of mine to revise the architectural plan for the Auditorium' (p. 5, line 17 of Amos L. Herold's deposition). Whereas, plaintiff has not pleaded that he is licensed to practice architecture under the provisions of Article 249a, Vernon's Revised Civil Statutes, and therefore has no standing to charge or collect architect's fees."

The affidavit of W. T. Blodgett in part is:

"The first contact with the architectural firms who have designed the auditorium was made by a committee which had been appointed by the City Council in 1950. The committee had laid down certain basic requirements of an auditorium in a previously published report. The committee and the architects filed a report with the City Council on April 30, 1953 which represented their combined thinking as to the facilities which should be included. The Council took this report under advisement and on July 15, 1954, a formal contract was signed with the architects. No further requirements or instructions were given to the architects at this time. In May or June of 1955 the Council held several meetings with the Auditorium Committee, the Chamber of Commerce, the architects and others going over the preliminary plans of the auditorium. In June of 1955 two public hearings were held at which the general public was invited to and did offer criticisms and suggestions of the preliminary plans. The Council, by resolution, instructed the architects to consider all of these suggestions."

Appellant Herold by counter affidavit stated that he had a contract with the City to be paid 5% as reflected by the Council action in its resolution of June 9, 1955, and that he did not claim to have been engaged as an architect for a fee or other direct compensation for his alleged services and submission of his ideas and proposals to the Council, in the planning or designing, or supervision of the construction of buildings, by or for other persons, as a business or profession, or represent or advertise himself as an architect as is regulated by Article 249a, V.A.C.S., and especially in section 10(a) thereof, but was within the exceptions provided in section 14, subdivision 3 of Article 249a.

The affidavit further recited that the Council did approve his contract as alleged in his petition; that the cause had been set for trial and jury fee paid prior to the hearing on the City's motion.

Appellant in his deposition set out the proposed changes suggested and of his claims for compensation and the action of the Council.

In granting the motion for summary judgment the Court, without passing on the City's special exceptions, and if sustained, in granting appellant an opportunity to amend, was in error as there were controverted fact issues to be determined.

It may well be that on a trial the appellant will be unable to sustain the burden of supporting his allegations by proof or that he may find himself confronted by legal barriers. This can only be determined by a trial on the merits.

■ Rule 166-A, Texas Rules of Civil Procedure, providing for a summary judgment together with the cases construing the rule, are that the purpose of the rule is to expedite the final determination of a case where there are no material issues of fact, and a reviewing court is required to view

all evidence in the light most favorable to plaintiff, to disregard conflicts in the testimony and to indulge in favor of plaintiff's every intendment reasonably deducible from the evidence, and to determine the question of whether or not a fact issue was raised by the pleadings, affidavits and evidence.

Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93.

Appellee concedes that the judgment should not stand if the Trial Court did not already have sufficient grounds to absolutely foreclose appellant's cause of action, and unless sufficient facts to support it are to be found from plaintiff's petition and from the affidavits in support of the motion.

■ The City did not negative certain allegations of fact in the appellant's pleading and the deposition of Herold. The motion should have been denied.

Tigner v. First National Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85; King v. Rubinsky, Tex.Civ.App., 241 S.W.2d 220; Frazier v. Glens Falls Indemnity Co., Tex.Civ.App., 278 S.W.2d 338, er. ref., N.R.E.; Womack v. Allstate Insurance Company, Tex., 296 S.W.2d 233.

The judgment of the Trial Court is reversed and remanded.

### On Motion for Rehearing

HUGHES, Justice.

In its motion for rehearing the City of Austin has one point in which it asserts we erred because of the existence of these uncontroverted facts:

1. Appellant.is not licensed to practice architecture in Texas.

2. The compensation sought by appellant is for "proposals of mine (appellant) to revise the architectural plan for the auditorium."

These facts are uncontroverted. If they, standing alone, preclude, as a matter of law, recovery by appellant then this motion should be granted and the judgment of the Trial Court affirmed.

It is the City's contention that Art. 249a, V.A.C.S., regulating the practice of architecture, and its construction and application in Clark v. Eads, Tex.Civ.App. Fort Worth, 165 S.W.2d 1019, writ ref., w.o.m., compels the relief it now seeks.

We quote from Sec. 10(a) of Art. 249a, supra:

"Any person, or firm, who for a fee or other direct compensation therefor, shall engage in the planning, or designing, or supervising the construction of buildings to be erected or altered in this State, by or for other persons than themselves, *as a profession or business,* and shall represent or advertise themselves as architects, architectural designers, or other title of profession or business using some form of the word 'architect' shall be considered as practicing the profession of architecture in this State, and shall be required to comply with the provisions of this Act; * * *"

We also quote Sec. 14, subd. 3 of Art. 249a:

"This Act shall not apply: * * *

"3. To any person or firm who prepares plans and specifications for the erection or alteration of a building or supervises the erection or alteration of a building by or for other persons than himself, or themselves, but does not in any manner represent himself, herself, or themselves to be an architect, architectural designer, or other title of profession or business using some form of the word 'Architect'."

We submit that there is no practical difference between the words "planning, or designing, or supervising the construction of buildings to be erected or altered in this State" as contained in Sec. 10(a) of the Act defining the practice of architecture

and the words "who prepares plans and specifications for the erection or alteration of a building, or supervises the erection or alteration of a building" as contained in Sec. 14, subd. 3 of the Act defining to whom the Act should not apply.

Now unless there is a valid and substantial difference between Sec. 10(a) of the Act defining those who must comply with the Act and Sec. 14, subd. 3 of the Act defining those who are exempt from the Act then we are confronted with a situation similar to that found in the Naturopathic Act held by us to be invalid in Wilson v. State Board of Naturopathic Examiners, 298 S.W.2d 946, writ ref., N.R.E., on the ground of uncertainty in that the Act both granted and denied naturopaths the right to practice medicine.

We do, however, find a substantial difference between the sections under discussion. That difference lies in the italicized portion of Sec. 10(a) which limits the application of the Act to those who engage in the described activities "as a profession or business." [1]

■ The words "as a profession or business" are omitted in excluding Sec. 14, subd. 3 and it is our opinion that the application of the Act is to be determined by ascertaining whether or not appellant has engaged in the specified activities as a "profession or business."

1. Another difference is that this section prescribes "and who shall represent or *advertise* themselves" as architects whereas Sec. 14, subd. 3 omits the word "advertise."

2. This is the only appellate decision which discusses or cites Art. 249a, V.A.C.S. This statute has been amended several times since the Eads decision but the provisions involved here have remained practically unchanged.

3. We quote from its Motion:
   "It is respectfully submitted that the exception provided in Subdivision 3 of Section 14, Article 249a, V.A.C.S. is intended to relieve from punishment those

■ There is evidnce in this record from which a fact finder could find that appellant was not so engaged. This evidence, whether pleaded or not, prevents the rendition of a summary judgment. Womack v. Allstate Insurance Company, Tex., 296 S.W. 2d 233.

The decision in Eads, supra,[2] is not controlling here. There the plaintiff, suing for compensation for architectural services, pleaded that he was a graduate architectural engineer, that he had practiced his trade and profession in the State of Texas as designer, draftsman, architect, engineer and engineer of buildings and structures. When asked if he had always held himself out as an architect he answered "Sure."

Obviously the court was correct in Eads in holding that the plaintiff was required to obtain a license and that without one he could not recover.

The motion is overruled.

On Second Motion for Rehearing

The City points out that Sec. 10(a) of Art. 249a, V.A.C.S., in addition to the requirement that the activities defined be pursued as a "profession or business" further requires that it be done "for a fee or other direct compensation." From this the City argues, as we understand it,[3] that subd. 3 does not exempt those who engage in the activities there described if they charge a fee.

who indulge the universal human propensity to offer free advice on architectural or any other matters, but that when one undertakes to charge a fee one comes within the express prohibition contained in Section 1, as to any act in the field defined in Section 10(a), of Article 249a, V.A.C.S.
   "At common law every dog was entitled to one bite before his owner was on notice of a vicious propensity; but professional licensing is statutory, not common law, and the statutes are intended not merely to muzzle the habitual offender, but rather to forestall the first bite."

Our answer to this contention is that subd. 3 exempting those engaged in the activities there described does not condition such exemption on the services being performed gratuitously and we have no authority to write such condition into the statute.

It is to be noted also that Sec. 13 of the Act makes it a criminal offense only if architectural activities are pursued as a profession or business and a fee is charged. It would seem that if the Legislature intended not to exempt non-professionals who charged a fee it would have made this an offense under Sec. 13. This it did not do.

The motion is overruled.